WILLI R. RAABE *et al.*, Plaintiffs-Appellants and Plaintiffs-Appellees, v. MESSIAH EVANGELICAL LUTHERAN CHURCH OF PORT BYRON *et al.*, Defendants-Appellees (Brinkman and Pessman Lumber Company, Defendant-Appellant).

Third District No. 3—92—0578

Opinion filed June 3, 1993.

Stewart R. Winstein and David L. Cunningham, both of Winstein, Kavensky & Wallace, of Rock Island, for Willi R. Raabe and Diane R. Raabe.

Robert T. Park, of Katz, McAndrews, Balch, Lefstein & Feiweger, of Rock Island, for appellant Brinkman and Pessman Lumber Company.

John D. DeDoncker, of Lane & Waterman, of Davenport, Iowa, for appellee Messiah Evangelical Lutheran Church of Port Byron.

Mark A. Woollums, of Betty, Neuman & McMahon, of Davenport, Iowa, for appellees J. Darwin Olsen and Susan Olsen.

JUSTICE BARRY delivered the opinion of the court:

As a result of the flooding of their home in Port Byron, Illinois, plaintiffs Willi and Diane Raabe brought an action to recover damages and to secure an injunction against the owners of certain realty across Highway 84 from them. The trial court entered summary judgment in favor of defendants Messiah Evangelical Lutheran Church (hereafter Church) and Darwin and Susan Olsen (Olsens) and denied summary judgment as to the other defendant, Brinkman & Pessman Lumber Co. (Brinkman). Two appeals were filed: Plaintiffs appealed from the summary judgments entered in favor of defendants, the Church and the Olsens, while we granted Brinkman leave to appeal from the denial of its motion for summary judgment. The two appeals have been consolidated before this court.

The facts of this case are straightforward. Since 1974 plaintiffs have owned a home in Port Byron on the west side of Route 84, downhill from the premises owned by defendants on the east side of the highway. In 1979 the Church constructed a parking lot on its property and changed the grade of its land. According to plaintiffs' deposition testimony, immediately after the parking lot was constructed plaintiffs began to experience flooding each time there was a heavy rain. Gravel and mud would wash onto the highway, and water would overflow the drainage ditch along the highway and enter their home at least once each year.

Plaintiff Willi stated that heavy rains also caused water to flow from the Church parking lot onto the property of Brinkman Lumber Co. just north of the Church. Plaintiff saw deep ruts in the Brinkman property after each heavy rain. In 1981, Brinkman built a fence, designed like a wall, to keep the water from flowing onto its land. Plaintiff stated: "And what happened now was all the water that would run across their property would hit the wall [fence] and be channeled back into the church driveway, and then it just had like a water fall coming down the driveway, and then it would catapult all the way across to my side." After the fence was built, the flooding of plaintiffs' property became more intense.

The culmination of plaintiffs' problems occurred in June of 1990 when an unusually heavy rain washed out their driveway and flooded their entire home at least ankle deep. Dirt and gravel from

the Church parking lot also washed onto Route 84, making it impassable for several hours. Later, plaintiffs discovered that the foundation of their home was cracked so that water seeped through the foundation and flooring. Due to its proximity to the Mississippi River, the house was built on a slab.

Plaintiffs filed their complaint seeking an injunction and damages against defendants in 1991. Count I alleged that the Church's installation of a parking lot changed the natural flow of water on their premises diverting the storm water runoff to the highway ditch located on the east side of Highway 84. Plaintiffs further alleged that when excessive amounts of rain fell on June 16, 1990, and prior thereto, the rain water was diverted from the ditch across Route 84 onto plaintiffs' premises. Plaintiffs' also alleged various acts amounting to negligent construction of the parking lot. They sought recovery for damages to their property in the amount of $13,915 and for loss of value due to the foundation crack, $32,000. In addition, plaintiffs requested an injunction to order the Church to restore the original grading or to install a storm sewer system to provide for the runoff of surface water.

Count II of the complaint alleged that defendant Brinkman installed a fence along its east and south property line to act as a barrier to divert the storm water runoff into the drainage ditch and across Route 84 and that, as a result of the construction, plaintiffs' property was flooded on June 16, 1990, and prior thereto. Plaintiffs sought money damages and also an injunction to require removal of the fence and restoration of natural drainage.

Count III contained allegations that defendants Olsen purchased a portion of the Church premises on March 1, 1990, and that these defendants have not altered the parking lot or drainage which continue to cause damages as a result of the parking lot installed by the Church. Money damages and an injunction are requested as against the Church in count I. An additional count against other purchasers of a portion of the Church property was dismissed because their purchase occurred after the June 16, 1990, flooding of plaintiffs' property. The dismissal of count IV is not challenged in this appeal.

Our first concern on appeal is whether the trial court erred in entering summary judgment in favor of the Church and the Olsens. Examination of the memorandum of opinion filed in the circuit court discloses that the trial court held that plaintiffs' cause of action is not barred by the five-year statute of limitations in section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch.

110, par. 13—205) (now 735 ILCS 5/13—205 (West 1992)). Section 13—205 applies, *inter alia,* to causes of action to recover for damages to real property. The court then ruled that plaintiffs' alleged cause of action against the Church and the Olsens was based upon an act or omission in the construction of an improvement to real property, the Church parking lot, and, therefore, was barred by the four-year statute of limitations contained in section 13—214 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—214) (now 735 ILCS 5/13—214 (West 1992)). The court found that the time of plaintiffs' discovery of the cause of action against the Church was not later than April 7, 1980, the date these same plaintiffs filed a prior suit against the Church and others for damage to their home and yard as the result of water and mud flowing across Route 84 onto plaintiffs' property following the construction of the parking lot. The 1980 litigation was ultimately dismissed with prejudice following an undisclosed settlement.

The rules of law applied by the trial court in this case were those set out in *Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 688, 456 N.E.2d 904, as follows:

"When a structure is placed on dominant land which unreasonably increases the flow onto the servient land, a cause of action may accrue upon the completion of the structure if it is a permanent structure which is necessarily injurious by reason of its construction. [Citation.] If, however, the structure is not apparently injurious, but may be used in a way which may or may not result in injury, the cause of action does not accrue until the use of the structure causes injury. [Citations.] The fact that flooding may be uncertain in time, duration and extent does not prevent an improvement, which displays obvious potential to cause an unnatural overflow upon completion, from constituting an immediate, permanent injury."

Plaintiffs argue that, where recurrent and intermittent overflows are caused either by negligent use or operation of the structure or by natural phenomena and not as a necessary or direct result of the construction, then the limitations period runs from the last overflow. (*Kurtz v. County of Logan* (1987), 158 Ill. App. 3d 715, 511 N.E.2d 252.) *Kurtz v. County of Logan* involved facts similar to those in the case before us. After defendant county replaced a bridge and straightened the highway adjoining the plaintiffs' farmland, plaintiffs began to notice flooding of their fields after hard rains, beginning in 1977. The appellate court ruled that there

was at least a factual question as to whether a separate harm is done to the plaintiffs each time their fields are flooded so that the statute of limitations begins anew for damages caused each time. *Kurtz* involved the five-year statute of limitations barring causes of action for damage to realty as set forth in section 13—205 of the Code of Civil Procedure.

■■ The trial court here held that plaintiffs' damages were not caused by the manner in which either the parking lot or the fence was used, but rather by the construction of both without modification of the drainage system. In our view, the distinction between damage caused by use and that caused by construction is not determinative here due to a recent decision of the Illinois Supreme Court clarifying the law relating to causes of action for flooding.

In *Meyers v. Kissner* (1992), 149 Ill. 2d 1, 594 N.E.2d 336, in 1977, defendants constructed large earthen levees along the banks of the Skillet Fork River on their property, upstream from plaintiff's land, to prevent flooding on defendants' property. Almost at once, the river channel became deeper and wider and the water current stronger. The quality of plaintiff's soil deteriorated as the land suffered erosion, washing and scouring. Plaintiff brought suit in 1986. The trial court ruled that plaintiff's action was barred by the five-year statute of limitations in section 13—205. The appellate court affirmed, but the supreme court reversed, holding that the levees as constructed by defendants constitute a nuisance to plaintiff and will be treated as a continuing wrong, giving rise to repeated causes of action. In a particularly cogent portion of its opinion, the court modified the law previously developed in cases involving sanitary districts and held:

> "Since defendants' levees constituted a nuisance to plaintiff by increasing the washing, erosion, and scouring of his land, the mere passage of five years does not change the levees' character. '[T]he maintenance of a structure which will continue to cause a wrongful diversion of water upon the plaintiff's land, in quantities varying with the seasons, is a continuing nuisance, and an invasion of the plaintiff's right from day to day, and he may select his own time for bringing an action therefor,' and he is not barred by the lapse of five years from the erection of the structure. [Citations.] For continuing violations such as the one at hand, the five-year statute of limitations merely specifies the window in time for which monetary damages may be recovered prior to the filing of the complaint. *Thus, we hold that this case falls within the*

*ordinary rules applicable to continuing nuisances and continuing trespasses and that plaintiff is not barred from recovering monetary damages for the five-year period preceding the filing of the complaint.*" (Emphasis added.) 149 Ill. 2d at 10-11, 594 N.E.2d at 488.

■■ In the case before us, plaintiffs have alleged that the parking lot constructed by defendants caused a wrongful diversion of water upon plaintiffs' land "on June 16, 1990, and prior thereto." Deposition evidence discloses repeated episodes of flooding on plaintiffs' property on an annual basis with the quantity of water varying from time to time. Applying the ruling in *Meyers v. Kissner*, we conclude that defendants have created a continuing nuisance with recurring injuries to plaintiffs' property and, accordingly, that plaintiffs' cause of action is not barred by either the four-year or the five-year statute of limitations. Instead, plaintiffs' cause of action arises each time flooding occurs, and plaintiffs may select their own time for bringing suit. For a continuing violation such as this, plaintiffs may recover only the damages occurring in the five years prior to the filing of the complaint.

By so ruling, we interpret *Meyers v. Kissner* as applying to all causes of action to recover damages to real estate caused by recurrent flooding whether the cause results from the initial construction of an improvement or from its maintenance and use. Thus, the key factor here is that the cause of harm is in the nature of a continuing nuisance with recurring damages, regardless of which statute of limitations defendants seek to invoke.

Our decision applies to Brinkman's fence as well as to the parking lot constructed by the Church and owned by the Olsens. Hence, we need not determine whether the fence qualifies as an improvement to real estate within the meaning of section 13—214. We hold, in effect, that neither section 13—205 nor section 13—214 is a bar to plaintiffs' cause of action.

■■ Defendant Church argues that plaintiffs' cause of action is barred by the doctrine of *res judicata* since plaintiffs' previous cause brought in 1980 was dismissed with prejudice, thereby acting as an adjudication on the merits as to all matters within the original complaint. (See *Reynolds Metals Co. v. V.J. Mattson Co.* (1984), 125 Ill. App. 3d 554, 466 N.E.2d 357.) As we have previously indicated, recurring damages caused by flooding of plaintiffs' property give rise to a new cause of action each time flooding occurs. Plaintiffs can, of course, only recover once for each instance of damage,

and then only for damages incurred during the previous five years, but their cause of action here is not barred by *res judicata*.

For the reasons stated, we reverse the order of the trial court entering summary judgment in favor of defendants Church and the Olsens, affirm the denial of Brinkman's motion for summary judgment and remand this cause for further proceedings against defendants Brinkman, Church, and the Olsens consistent with this opinion.

Reversed and remanded.

McCUSKEY, P.J., and BRESLIN, J., concur.