COMMERCIAL MORTGAGE AND FINANCE COMPANY, Indiv. and as Trustee, Plaintiff-Appellee, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants (Jan Mansfield McCaslin, n/k/a Jan Mansfield, Defendant-Appellant).

Second District   No. 2—92—1220

Opinion filed December 10, 1993.—Rehearing denied January 10, 1994.

John J. Holevas, of Williams & McCarthy, P.C., of Rockford, for appellant.

Wesley E. Lindberg and Craig P. Thomas, both of Reno, Zahm, Folgate, Lindberg & Powell, of Rockford, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Jan Mansfield McCaslin, n/k/a Jan Mansfield (Mansfield), appeals the judgment of the circuit court which awarded a deficiency judgment against her in favor of plaintiff, Commercial Mortgage and Finance Company, in the amount of $119,436.38. Mansfield raises three issues for review: (1) whether she executed trust deed notes as a comaker or as an accommodation party; (2) whether a novation occurred; and (3) whether plaintiff's failure to notify Mansfield of loan extensions constituted *laches*.

Plaintiff sought a foreclosure of property under trust deed notes signed by Mansfield and Bill Hamlett as secretary and president, respectively, of Ledgewood Development Corporation (Ledgewood), and signed individually by Mansfield, Hamlett, Clara Hamlett and Frank McCaslin (shareholders). The court granted the foreclosure, and the property was sold at a sheriff's sale. The court found that all of the individual defendants were in default, and it entered a deficiency judgment against them. Mansfield moved to vacate the judgment, and the court allowed her to file affirmative defenses.

Mansfield alleged that the debt was discharged in bankruptcy; she was an accommodation party; there was a novation because John E. Lehman, Jr., purchased the property and signed a personal guaranty; and plaintiff was guilty of *laches* because Mansfield believed that she was released from liability and therefore did not file a claim against Lehman's estate.

Because Mansfield did not list plaintiff as a creditor in the bankruptcy proceeding in 1985, the bankruptcy court allowed plaintiff to proceed against Mansfield on the deficiency.

The parties submitted the following documents. On August 8, 1980, plaintiff sent a commitment for a construction loan to the shareholders. Hamlett, as president of Ledgewood, and George Zannis, as then-president of plaintiff, signed the document, which pro-

vided for a $200,000 loan secured by a trust deed on the Timbers, undeveloped real estate. The commitment letter stated:

"Signature of Corporate President and Secretary (including Corporate seal) will be required. Also the Secretary's Certificate and copy of the resolution of the Board of Directors authorizing such loan. Personal guarantees will also be required of Mr. & Mrs. McCaslin and Mr. & Mrs. Hamlett."

The minutes of a special meeting of the board of directors of Ledgewood, on September 29, 1980, stated that the board of directors resolved that the president and secretary of Ledgewood were authorized to mortgage the property to plaintiff for $200,000 for one year, and these officers were further authorized to execute all necessary notes and other documents to effect the loan.

A contractor's affidavit, dated September 30, 1980, and signed by Mansfield and Hamlett states that the shareholders were the owners of the property and they were developing a condominium project on it. The affidavit further stated that the purpose of the affidavit was to procure the construction trust deed loan by plaintiff. A trust deed, dated September 30, 1980, provided that Ledgewood conveyed the property in trust to plaintiff for $200,000. The trust deed further stated that it was a business purpose loan. The trust deed was signed by Hamlett and Mansfield as president and secretary, respectively, of Ledgewood. Five trust deed notes were signed by Hamlett and Mansfield in their corporate capacities and by them and Clara Hamlett and Frank McCaslin as individuals. The notes were dated September 30, October 10, November 10, December 18, 1980, and January 7, 1981, and were due September 30, 1981. A check drawn on plaintiff's account, dated September 30, 1980, was made payable to Ledgewood.

On August 13, 1981, Frank McCaslin quitclaimed his interest in the property to Mansfield. Included in plaintiff's trial exhibits is an unsigned document entitled "Release of One Co-Maker From Trust Deed Note," which purports to release Frank McCaslin from responsibility for the notes.

On August 21, 1981, plaintiff sent a letter to Ledgewood which listed the amounts due on the loan. This letter, of which copies were sent to the shareholders, stated:

"I was hopeful that a sale of one or more lots would develop and that you would be able to make the payment from corporate funds. Apparently this has not occurred and since your account is seriously past due, please accept this as notice that if the corporation has not paid this obligation by Au-

gust 31, 1981 that we expect you as personal guarantors to bring the account current. Please remember that the notes are signed personally as well as by the corporation."
The letter was signed by J.R. Hogfeldt as chairman of the board of plaintiff.

A contract for sale of the property, dated September 3, 1981, lists the seller as care of "Bill Hamlett and Clara Hamlett and Jan Mansfield"; however, the deed conveying the property to Lehman is a corporation warranty deed which lists the grantor as Ledgewood, and it is signed by Hamlett and Mansfield in their corporate capacities.

On September 8, 1981, plaintiff sent a letter to Lehman acknowledging his intent to buy the Timbers from Ledgewood. The letter provided that plaintiff waived the right to enforce the acceleration clause in the trust deed in the event of a sale of the property. The letter further stated, "[t]his waiver does not release the original signers on the Trust Deed Notes in the event of default." The letter also provided for an extension of the loan to September 30, 1982. It was accepted by Lehman.

Lehman signed a personal guaranty on September 11, 1981. That guaranty states that Lehman was guaranteeing the credit given to Ledgewood. On September 30, Ledgewood and the shareholders executed an extension agreement with plaintiff and Lehman. This agreement represented that Frank McCaslin and Mansfield had divorced and Frank McCaslin quitclaimed his interest in the property to Mansfield. Plaintiff released Frank McCaslin from further obligations under the notes and accepted Lehman's guaranty. Plaintiff agreed to an extension of time for payment of the notes under the following conditions: Lehman agreed to assume all of the obligations of the notes as if he had executed the notes, and he agreed to substitute his name for that of Frank McCaslin; final payment for the balance of the debt was due September 30, 1982; and all other provisions of the notes remained in effect.

Eight more extension agreements were signed by Lehman and plaintiff. Each agreement provided for a one-year extension. The last agreement extended the date of payment to September 30, 1990. Only the agreement executed September 20, 1981, mentioned Ledgewood or the shareholders. In 1984, Lehman submitted to plaintiff his personal financial statement for the purpose of obtaining an extension on the loan.

Apparently, Lehman died on April 16, 1990, and, on June 26, 1990, plaintiff filed a claim against Lehman's estate for the princi-

pal sum and $5,500 interest due on June 30, 1990. Plaintiff filed the foreclosure complaint on November 5, 1990.

At the hearing, Mansfield testified that Ledgewood was set up to develop real estate. Mansfield and her then-husband, McCaslin, together owned 50% of the shares of Ledgewood. After Mansfield's and McCaslin's marriage was dissolved, Mansfield owned 50% of the shares of the corporation. According to Mansfield, Bill Hamlett did most of the negotiating with George Zannis for the loan. Mansfield admitted that she endorsed the check from plaintiff, payable to Ledgewood, for $58,844, but she explained that the proceeds from the check were deposited into Ledgewood's account. Mansfield further stated that the $200,000 was used to put in a street, curbs and gutters. The transaction for the sale of property to Lehman included other parcels owned by the shareholders as well as the land owned by Ledgewood. The shareholders agreed to continue as personal guarantors for the first year after the property was sold to Lehman because Lehman represented to them that he had a buyer for the property and he intended to close that deal within 30 to 60 days. McCaslin quitclaimed his interest in the property to Mansfield in accordance with the terms of their dissolution judgment. Mansfield also testified that she was unaware that Lehman signed extensions for the loan.

Hogfeldt testified that plaintiff loaned money to the shareholders to develop the Timbers. The land was owned by the shareholders' closely held corporation, Ledgewood, and the two couples were the sole shareholders. Hogfeldt stated that plaintiff made the loan to the shareholders, who owned the property, and Ledgewood signed the agreements because the shareholders put the property in Ledgewood's name. According to Hogfeldt, Ledgewood was "a shell corporation." Hogfeldt admitted that in 1981 plaintiff was looking first to Ledgewood to pay off the debt, then to the individual shareholders. As of September 1982, plaintiff acknowledged that Lehman assumed all of the obligations for payment of the notes. Generally, plaintiff did not notify original makers of notes of extensions granted unless there was a default, and plaintiff did not notify Mansfield of the extensions. Hogfeldt stated that after he wrote to Lehman's widow requesting payment of the interest due on June 30, 1990, plaintiff received only the June 1990 payment from Lehman's estate.

The court found that Mansfield was not an accommodation maker but a comaker because the loan was for construction on property owned by her and the other shareholders. Mansfield nego-

tiated the loan directly and indirectly. The court also found that Ledgewood was a "paper corporation" and Mansfield was directly involved in the transactions concerning the sale of the land to Lehman. Because Mansfield was a comaker of the notes, she was not released by any subsequent extensions. The court also determined that there was no novation. The court therefore ordered that judgment be entered against Mansfield.

Mansfield moved to reconsider the judgment, and the court denied the motion. Mansfield timely appealed.

A trial court's ruling in a bench trial will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 433.) However, where the record is devoid of any facts to support the trial court's decision, the judgment cannot stand. *Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 532.

■■ Mansfield first contends that the court erred in finding that she executed the trust deed notes as a comaker rather than as an accommodation party under section 3—419 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1991, ch. 26, par. 3—419 (now 810 ILCS 5/3—419 (West 1992))). This distinction is critical because, under section 3—605(c) of the Code, an extension of the due date of the obligation discharges an accommodation party "to the extent the *** accommodation party proves that the extension caused loss to the *** accommodation party with respect to the right of recourse." (Ill. Rev. Stat. 1991, ch. 26, par. 3—605(c) (now 810 ILCS 5/3—605(c) (West 1992)).) Under section 3—606, which applies here (Ill. Rev. Stat. 1989, ch. 26, par. 3—606(1)(a) (repealed eff. January 1, 1992)), an accommodation party is released from liability on a note when it is extended without his consent or without an express reservation of rights by the holder. *Holcomb State Bank v. Adamson* (1982), 107 Ill. App. 3d 908, 911.

■■ Under section 3—419, an accommodation party is one who signs an instrument "for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument." (Ill. Rev. Stat. 1991, ch. 26, par. 3—419(a) (now 810 ILCS 3—419(a) (West 1992)).) An example of subsection (a) is provided in the Code Comment 1:

> "[I]f X cosigns a note of Corporation that is given for a loan to Corporation, X is an accommodation party if no part of the loan was paid to X or for X's direct benefit. This is true even though X may receive indirect benefit from the loan because X is employed by Corporation or is a stockholder of

Corporation, *or even if X is the sole stockholder so long as Corporation and X are recognized as separate entities."* (810 ILCS Ann. 5/3—419, Uniform Commercial Code Comment 1, at 269 (Smith-Hurd 1993).) Mansfield asserts that the facts here fall within this example.

■■ Plaintiff responds first that Mansfield waived this argument by failing to assert it in the trial court. We disagree. Although Mansfield did not cite to the statutory section, she raised as an affirmative defense that she was an accommodation maker, using the factors set forth in *Aurora Firefighter's Credit Union v. Harvey* (1987), 163 Ill. App. 3d 915. Those factors are: (1) the party did not participate in negotiations for credit or subsequent modifications of credit arrangements; (2) the creditor was aware that party was not the one seeking the credit; (3) the party is not the one to whom the proceeds were credited; and (4) the party has no interest in the purpose for which the proceeds were used. *Aurora Firefighter's*, 163 Ill. App. 3d at 920.

■ Under these standards, the evidence does not support the trial court's findings that Mansfield was not an accommodation party. There is no evidence to support the court's finding that Mansfield negotiated the loan or that Ledgewood was a "paper corporation." The loan was made to the corporation, and plaintiff required a resolution from Ledgewood's board of directors approving the mortgage. There is no evidence that Mansfield received any of the $200,000 loan proceeds, but, rather, she testified that the money was deposited in Ledgewood's account and it was used to improve the real estate. The trial court's finding that Mansfield directly received the proceeds from the sale of the property to Lehman also is unsupported by the record because it fails to consider that the sale included other parcels not owned by Ledgewood. Moreover, Mansfield's participation in that sale has no effect on whether she was an accommodation party to the note because once a signer's status has been established, it is not subject to change. *Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 144.

Plaintiff further asserts that under *Wohlhunter v. St. Charles Lumber & Fuel Co.* (1975), 62 Ill. 2d 16, the court correctly found that Mansfield was a comaker. Plaintiff's and the trial court's reliance on *Wohlhunter* is misplaced. In that case, the plaintiff loaned money to a corporation solely owned by two people. The promissory note was signed by the two men in their corporate capacities and individually by them and their wives. However, the promissory note provided that the signers of the note were principals. The supreme

court found that the signers were comakers and not accommodation parties. (*Wohlhunter*, 62 Ill. 2d at 17, 20.) Here, by contrast, the promissory notes did not purport to make the shareholders principals, and, in fact, the commitment letter and the August 21, 1981, letter from plaintiff establish that the parties intended the shareholders to be guarantors.

We agree with Mansfield that the facts here fall squarely within the Code Comment example. According to the evidence presented, Ledgewood owned the property, and the loan was made to Ledgewood. Mansfield deposited funds from the loan into Ledgewood's account, and she received none of the loan proceeds directly. Ledgewood followed all the corporate formalities, including having its board of directors adopt a resolution authorizing the mortgage. Mansfield signed all of the documents in her capacity as secretary of the corporation, and she also signed some of the documents in an individual capacity. There is no evidence in the record from which the court could pierce the corporate veil to find that the shareholders and the corporation were not separate entities. The documentary evidence shows that the parties intended the individual shareholders to be accommodation makers, and Hogfeldt admitted that plaintiff intended to seek payment first from Ledgewood. We conclude that the trial court's findings were against the manifest weight of the evidence, and we hold that Mansfield was merely an accommodation party. As Mansfield did not consent to the extension of the loan, her obligation was discharged. (See *Holcomb State Bank v. Adamson* (1982), 107 Ill. App. 3d 908, 911.) Because of our resolution of this issue, we need not address Mansfield's remaining contentions.

The judgment of the circuit court is reversed.

Reversed.

GEIGER and BOWMAN, JJ., concur.