No. 2--97--1302

December 9, 1998

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

FIRST BAPTIST CHURCH OF LOMBARD, ) Appeal from the Circuit

) Court of Du Page County.

Plaintiff-Appellee, )

)

) No. 95--CH--068

)

THE TOLL HIGHWAY AUTHORITY, ) Honorable

) John W. Darrah,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

This appeal is from a judgment following a bench trial in the circuit court of Du Page County.  Defendant, the Toll Highway Authority, raises three issues for our review: (1) whether the  lawsuit of plaintiff, First Baptist Church of Lombard, is barred by the statute of limitations; (2) whether the trial court erred in finding defendant responsible for flooding to plaintiff’s land; and (3) whether the trial court applied an incorrect measure of damages in this case of continuing trespass.  Finding merit only in defendant’s third issue, we affirm in part and vacate in part and remand to the circuit court with directions.

The First Baptist Church of Lombard (the Church) owns property located at the intersection of Route 53 and St. Charles Road in Lombard, Du Page County.  The land is improved with a church building and parking lot, which have existed on the property since 1960.  The property is located in the floodplain of the East Branch of the Du Page River.

In 1987, the Toll Highway Authority (the Tollway) constructed I-355.  A portion of I-355 was constructed in an area located to the west of the Church property and immediately east of the Du Page River.

On August 14, 1987, the Church sustained water damage to its building due to flooding.  The Church believed the Tollway’s construction of I-355 was the cause of its flooding.

On August 13, 1992, the Church filed an action in the Court of Claims against the Department of Transportation.  On January 4, 1995, the Court of Claims found that the Church’s action lay against the Tollway rather than the Department of Transportation.  The Court of Claims then dismissed the Church’s action with prejudice because it lacked jurisdiction over the Tollway.

The Church filed the present action against the Tollway on February 1, 1995, seeking damages and injunctive relief.  On September 28, 1995, the Tollway filed a motion to dismiss the Church’s complaint pursuant to section 2--619 of the Civil Practice Law.  See 735 ILCS 5/2--619 (West 1992).  The Tollway contended that, pursuant to section 13--214 of the Code of Civil Procedure (735 ILCS 5/13--214 (West 1992)), the Church’s claim against the Tollway was barred by a four-year statute of limitations.

In response to the Tollway’s motion to dismiss, the Church claimed it had inadvertently filed its action in the Court of Claims, naming the Department of Transportation as defendant instead of the Tollway.  The Church further claimed that a five-

year statute of limitations was applicable pursuant to section 13--

205 of the Code of Civil Procedure (735 ILCS 5/13--205 (West 1992)) and section 11--13 of the Illinois Drainage Code (70 ILCS 605/11--

13 (West 1992)).  The Church argued that its claim was not time-

barred because it filed its initial complaint in the Court of Claims on August 13, 1992, within five years of the occurrence of August 14, 1987.  The Church claimed that naming the Department of Transportation instead of the Tollway was a misnomer of a party, which should not be fatal to its lawsuit.

The Tollway filed a reply memorandum of law in support of its motion to dismiss.  The Tollway argued that no misnomer took place and even if the statute of limitations was five years, as claimed by the Church, the action was not instituted by the Church against the Tollway within five years after the cause of action accrued.

In an order dated July 2, 1996, the trial court denied the Tollway’s motion to dismiss.  The trial court did not provide a written explanation for its denial of the Tollway’s motion to dismiss.

At trial, Martha S. McKellar, Robert Keeney, and Thomas Everett, all long-standing members of the Church, testified that, other than a small puddle in the parking lot, the Church property had never flooded prior to 1987.  Each member, however, personally witnessed flooding after 1987.  In fact, McKellar testified that she observed water flowing from the Tollway property through culverts onto the Church property.  Furthermore, Keeney testified that Mr. McCabe, an attorney for the Tollway, admitted that the Tollway knew that the temporary haul road that they built created a flooding problem for the Church and that the Tollway would take care of the problem if the Church filed a claim.

The Church called several expert witnesses to testify on its behalf.  James E. Sparesus, an architect and president of Archiplan International, testified that the Tollway road acts as a barrier that stops the water drainage from the Church property and that the swale constructed by the Tollway is lesser pitched than is customary in standard engineering practice, causing the Church’s flooding problem.  Mr. Sparesus further testified that the construction of the I-355 road has caused the most dramatic reduction in pervious surfaces since 1985.  He also testified that some areas on a floodplain at 692 feet might not flood even when the river level exceeds 692 feet.

Irwin Branecki, a consulting civil engineer, testified that, had the Tollway installed the culvert lower and properly graded the swale, it would have helped to alleviate any flooding problem in the Church’s parking lot.  He also testified that the slope of the swale does not afford the Church property with positive drainage.  Mr. Branecki testified that he had studied the existing aerial topography and that before the Tollway road was constructed there was sheet drainage from the Church parking lot to a depression that obviously held a lot of water.

On cross-examination, Mr. Branecki testified that a back pitch on the culvert, as well as the pitch on the swale, becomes irrelevant when the Du Page River overflows.  On redirect examination, Mr. Branecki testified that in a very intense storm or when the Du Page River goes out of its banks it is probable that the water would start inundating the Church parking lot.  Mr. Branecki again stated that when the Tollway road was built the depression, which had held a great deal of water and stored runoff water from the Church property, was removed.  In other words, he stated that before the Tollway road was built there was some place for the water to go.

Brad Keith of Archiplan International, an expert in the field of architecture and land planning, testified that several factors contribute to the Church’s flooding problem, including the Tollway’s installation of an earthen berm, which prevents the water from naturally flowing from the Church site; a slope to the culvert that does not meet standard engineering practice; a culvert with a back pitch in the wrong direction; and loss of vegetation, all due to the Tollway's construction.  On cross-examination, Mr. Keith testified that when the engineer shot a few elevations of the swale to determine the pitch, he found some depressions that were inconsistent with complete positive drainage.

The Tollway called Nick Textor, an expert in the field of hydraulic engineering.  Mr. Textor testified that he was involved with the Tollway in the development of I-355.  He testified that, because the Tollway property transverses the existing floodplain, remedial measures were required in the form of collecting water runoff from the Tollway property and diverting it into detention ponds.  He testified that in constructing the berm, swale, and culvert they tried to maintain the existing drainage path as much as possible and that it was impossible to construct the swale at a proper pitch and still meet with the culvert.

Mr. Textor testified that, prior to the construction of I-355, runoff from the Church property drained to a depressional area that filled to an elevation of 687 feet and then drained to the East Branch of the Du Page River.  In Mr. Textor’s opinion, the depression did not prevent the Church property from being flooded because it was downstream of the Church property.  Mr. Textor also testified that when the East Branch of the Du Page River overflowed, it would first fill the depression and all the low areas and then continue to rise.

Mr. Textor testified that, because remedial measures were taken in the design of the highway, the presence of I-355 does not cause the Church to suffer flooding or increased flooding.  Rather, in Mr. Textor’s opinion, the water is the result of back water from the East Branch of the Du Page River.  He further testified that on about five occasions from 1966 to 1980 the river level exceeded 688 feet and the Church property necessarily flooded on those occasions.

On cross-examination, Mr. Textor admitted that the original design plan as approved by the Army Corps of Engineers anticipated the water drainage to a north culvert.  He testified that the plans were subsequently changed to provide for water drainage to a south culvert.  Mr. Textor stated that he had no knowledge of whether the Tollway sought approval for the addition of a 30-inch culvert on the south side of the drainage project or the addition of a berm. 

On the issue of damages, evidence was introduced by the Church that some 10 options were considered as remedial measures.  Several of the options considered were not feasible either because they involved eliminating the berm, which both parties disfavored, or constructing additional berms and dykes, which the local government would not approve.

Following a bench trial and written closing arguments, the trial court issued a written opinion and order on November 25, 1997.  The trial court found that the Tollway's construction of the swale was contrary to proper engineering standards.  The trial court further found that, since construction of I-355 in 1987, the plaintiff’s property has flooded regularly when the Du Page River rose to a height in excess of 688 feet and, during that time, the interior of the Church experienced significant flooding, causing damage to the contents and furnishings therein and substantially interfering with the Church's use and enjoyment of the premises.  The trial court found that the Tollway's construction of I-355 was the direct and proximate cause of the Church's flooding.

Ultimately, the trial court determined that the Tollway's actions constituted a trespass to the Church property.  The trial court determined that remedial and preemptive measures were the reasonable and appropriate method to restore the Church property to its original condition and to restore to the Church the full use and enjoyment of its property.  The trial court reasoned that an award to the Church of the diminution of the market value would be inadequate to protect the Church’s interest in the use and enjoyment of its property.  The trial court further held that the Church’s damage for loss of personal property located in the Church building at the time of the flooding in 1987 was time-barred.  The trial court awarded the Church $328,229, including engineering fees but excluding trial and trial preparation engineering and expert fees; additionally, the court awarded the Church costs of $223.  The Tollway timely appealed.

We begin our discussion by noting that the Church’s brief fails to comply with Supreme Court Rule 341(e)(3).  See Official Reports Advance Sheet No. 13 (June 18, 1997), R. 341(e)(3), eff. July 1, 1997.  The Church failed to include the applicable standards of review.

Additionally, we note that the Church’s brief fails to comply with Supreme Court Rule 6.  145 Ill. 2d R. 6.  Rule 6 requires citation of cases to include the page of the volume where the case begins and the pages upon which the pertinent matter appears.  An unacceptable number of cases cited by the Church contained inaccurate citations, requiring the court to perform additional research.

We first address the Tollway’s contention that the Church’s lawsuit is barred by the applicable statute of limitations.  The parties on appeal disagree about the applicable statute of limitations period.  The parties also disagree over whether the complaint filed by the Church against the Tollway on February 1, 1995, should relate back to the filing of the original complaint  against the Department of Transportation on August 13, 1992.

The application of statutes of limitations is a question of law that is evaluated according to a 
de novo
 standard of review.  See 
Tatara v. Peterson Diving Service
, 283 Ill. App. 3d 1031, 1037 (1996).  This means that we must review the matter anew, "the same as if the case had not been heard before and as if no decision had been rendered previously."  
Tatara
, 283 Ill. App. 3d at 1037.

The trial court held in its judgment that the Church’s damage for loss of personal property located in the Church building at the time of the flooding in 1987 was time-barred.  The Church has not challenged that ruling.  Thus, the only question on appeal concerning the applicable statute of limitations is with regard to the Church’s claim for damages to enable it to take preemptive measures to protect it from further flooding.

The parties concede that the construction of I-355 was complete in 1987 and that the Church building sustained damage as a result of flooding on August 14, 1987.  The Church alleges continued flooding of its property, amounting to a continuing trespass.  The Tollway argues that the Church’s cause of action accrued from the time of the completion of construction of I-355 in 1987.  We disagree with the Tollway’s argument.

Actions involving the overflow of water are to be analyzed using the rules of continuing trespass.  
Meyers v. Kissner
, 149 Ill. 2d 1, 11 (1992); 
Zimmer v. Village of Willowbrook
, 242 Ill. App. 3d 437, 447 (1993).  In cases of continued flooding, such as this, the statute of limitations specifies the window in time for which monetary damages may be recovered prior to the filing of the complaint.  See 
Meyers
, 149 Ill. 2d at 11; 
Raabe v. Messiah Evangelical Lutheran Church
, 245 Ill. App. 3d 539, 543 (1993); 
Zimmer
, 242 Ill. App. 3d at 445.

In the instant case, the trial court found that the Church could not recover monetary damages for its 1987 loss of personal property because it had not filed its lawsuit within the statute of limitations period.  Again, we note that the Church has not challenged this holding, and we thus decline to rule on the statute of limitations period applicable to the Church’s claim for damage due to loss of personal property in 1987.

However, the trial court awarded remedial and preemptive measures of damages, presumably in lieu of injunctive relief.  We must now rule on whether the Church’s claim for equitable relief is time-barred.

The Tollway argues that the Church’s claim for remedial and preemptive damages is one of permanent injury that accrued upon the completion of the construction in 1987.  The Tollway cites several cases for the proposition that a cause of action for a claim of permanent injury accrues upon the completion of the necessarily injurious structure.  See 
Gass v. Metro-East Sanitary District
, 186 Ill. App. 3d 1077 (1989); 
Firestone v. Fritz
, 119 Ill. App. 3d 685 (1983); 
Schlosser v. Sanitary District of Chicago
, 299 Ill. 77 (1921).  The cases cited by the Tollway were decided before our supreme court issued its opinion in 
Meyers
 in 1992.  
Meyers
, 149 Ill. 2d 1.  We believe the Tollway misstates the applicable law.

The highway, as constructed by the Tollway, constitutes a nuisance to the Church.  " '[W]here one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action.' "  
Meyers
, 149 Ill. 2d at 10, quoting 
Simon v. Neises
, 193 Kan. 343, 348, 395 P.2d 308, 312 (1964).  Our supreme court declared in 
Meyers
 that "[s]tatutes of limitation, applicable in legal actions, are not directly controlling in suits seeking equitable relief."  
Meyers
, 149 Ill. 2d at 12.

In 
Meyers
, the plaintiff filed an action seeking both monetary damages and injunctive relief for damage to his farmland from continuing erosion aggravated by earthen levies constructed and maintained by the defendants.  After finding that the statute of limitations on monetary damages had not completely run and did not bar the plaintiff’s damages claim in its entirety, the court found that the plaintiff was not guilty of 
laches
 regarding its claim for injunctive relief.  
Meyers
, 149 Ill. 2d at 4, 11, 12.  The court reasoned that 20 adverse and uninterrupted years were necessary both for a prescriptive easement to come into existence and for actions for adverse possession of real property.  
Meyers
, 149 Ill. 2d at 12.  The court held that "in actions seeking equitable relief from the flooding of one’s property, absent extraordinary situations, 
laches
 will not act as a bar prior to the running of the 20-year time period."  
Meyers
, 149 Ill. 2d at 12.  The court noted that the defendant failed to show that they were in any way prejudiced by the plaintiff’s delay in bringing suit.  
Meyers
, 149 Ill. 2d at 13.  The court held that, since the plaintiff’s lawsuit was filed within seven years after the construction of the levy, and there were no extraordinary circumstances to justify shortening the limitation period below 20 years, the plaintiff was entitled to injunctive relief.  
Meyers
, 149 Ill. 2d at 13.

The facts in the present case mirror the facts in 
Meyers
.  We are thus compelled to follow 
Meyers
.  The instant case concerns the maintenance of a structure (a highway), which will continue to cause a wrongful diversion of water upon the Church’s land, constituting a nuisance and an invasion of the Church’s right to the use and enjoyment of its land.  The Church filed its action for equitable relief against the Tollway in 1995, within eight years of the Tollway’s construction of I-355, well within the 20-year time period prescribed by 
Meyers
.  Whether any "extraordinary situations" exist that would allow the Tollway to assert the defense of 
laches
 prior to the running of the 20-year time period is a question of material fact.  See 
Zimmer
, 242 Ill. App. 3d at 447.  We note that the Tollway did not raise the issue of 
laches
 before the trial court.  Since the Church’s lawsuit was filed less than eight years after the construction of the highway, and we see no extraordinary circumstances that justify shortening the limitation period below 20 years, the Church is entitled to injunctive relief.  Relying on 
Meyers
, we hold that the Church’s suit for equitable relief is not time-barred.

The Tollway next argues on appeal that the trial court’s finding that its construction of I-355 is the direct and proximate cause of the flooding of the Church’s property was erroneous.  We disagree with the Tollway’s argument. 

The standard of review in a bench trial is whether the judgment is contrary to the manifest weight of the evidence.  
Commercial Mortgage & Finance Co. v. American National Bank & Trust Co.
, 253 Ill. App. 3d 697, 702 (1993).  It is a well-established rule that a reviewing court will not substitute its judgment for that of a trial court in a bench trial unless the judgment is against the manifest weight of the evidence.  
Commercial Mortgage
, 253 Ill. App. 3d at 702.  "For a finding or judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident."  
Schackleton v. Federal Signal Corp.
, 196 Ill. App. 3d 437, 445 (1989).

The Tollway argues that the physical facts required the trial court to find that the Church property flooded before 1987, during the times when the level of the Du Page River rose above 688 feet.  The Tollway contends that when the Du Page River rises above 688 feet, all elevations below 688 feet must necessarily flood and, since the Church property is below 688 feet, it necessarily flooded prior to the construction of I-355, when the Du Page River level rose above 688 feet.  Thus, the Tollway asserts, it is not the cause in fact of the Church’s flooding problem.  In support of its contention, the Tollway cites 
Broussard v. Huffman Manufacturing Co.
, 108 Ill. App. 3d 356 (1982), which stated that the court must "reject testimony which is physically impossible, or so inherently improbable as to be contrary to the common experience of mankind."  
Broussard
, 108 Ill. App. 3d at 365.

The Tollway also cites 
Stolte v. Larkin
, 110 F.2d 226 (8th
 Cir. 
1940), and 
Born v. Osendorf
, 329 F.2d 669 (8th
 Cir. 
1964), in support of its proposition that when physical facts are inconsistent with testimony, the physical facts must control.  However, both of these cases were actually decided against the defendants’ positions therein.  We find the analysis of the federal court persuasive.  The court in 
Stolte
 stated
 that the test is "whether the physical facts make the theory of the plaintiffs so physically impossible that a verdict for plaintiffs could not be sustained."  
Stolte
, 110 F.2d at 229.  Likewise, the court in 
Born
 stated:

"However, so frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other deductions."  
Born
, 329 F.2d at 672.

We have reviewed the record and testimony in this case, in which the expert witnesses for the Church and the Tollway disagree as to the causation of the Church’s flooding problems.  While the physical facts in this case may conform more reasonably with the Tollway’s theory as to the cause of the flooding of the Church property, the test under 
Stolte
 and 
Born
, which we adopt, is not whether we, or the trial judge, might have been convinced that the Tollway’s theory was actually true, but whether the physical facts make the Church’s theory so physically impossible that a judgment for the Church could not be sustained.  See 
Born
, 329 F.2d at 672; 
Stolte
, 110 F.2d at 229.  In our view, the physical facts are not so clear and irrefutable as to render the testimony of the Church’s witnesses incredible and to allow no room for reasonable minds to entertain any other deduction than that set forth here by the Tollway.  See 
Born
, 329 F.2d at 672.  We thus find that the trial court’s judgment in favor of the Church was not against the manifest weight of the evidence.

Finally, the Tollway argues that the trial court did not apply the correct measure of damages.  "It is well settled that a reviewing court will not disturb a trial court’s finding as to damages unless its measure of damages was erroneous as a matter of law or the trial court ignored the evidence."  
Meade v. Kubinski
, 277 Ill. App. 3d 1014, 1021 (1996).

In an action for an injunction, the court may, in lieu of an injunction, give a judgment for damages.  See Restatement (Second) of Torts, §951 (1979).  A court may award damages in lieu of an injunction because of factors such as relative hardship or a countervailing public interest.  Restatement (Second) of Torts, §951, Explanatory Notes, Comment 
a,
 626-27.  In a nuisance case, damages may be awarded for harm likely to result from prospective continuing trespass.  Restatement (Second) of Torts, §951, Explanatory Notes, Comment 
a, 
at 626-27.

The Church sought an injunction in this case.  However, it is proper for the court to consider the relative hardship an injunction would impose on the Tollway.  Here, the Tollway would be required to perform major alterations to prevent its water discharge from coming onto the Church’s property.  Testimony at trial indicated that numerous options were considered, some of which were not feasible or could not be legally carried out.  Thus, the trial court properly considered awarding damages in lieu of injunctive relief in this case.  We note that in its briefs the Tollway has not challenged the trial court’s award of damages in lieu of an injunction.  The Tollway does, however, contend that the trial court did not apply the correct measure of damages.

Illinois case law is inconsistent on the issue of the correct measure of damages for injury to real property.  See 
Williams-

Bowman Rubber Co. v. Industrial Maintenance, Welding and Machining Co.
, 677 F. Supp. 539, 541 (N.D. Ill. 1987).  The court in 
Williams-Bowman
 provided a thorough review of Illinois case law regarding the measure of damages for injury to real property.  The court concluded that, in Illinois, the proper measure of damages for injury to real property depends upon the nature of the injury involved.  
Williams-Bowman
, 677 F. Supp. at 545.  The court in 
Williams-Bowman
 determined the proper measure of damages for injury to real property as follows:

"If real property is partially injured, 
and the injury may be repaired in a practicable manner
, then the proper measure of damages is the cost of restoring the property to its condition prior to the injury.  If, however, the real property is totally destroyed 
or damaged in a manner which renders repair impracticable
, then the diminution in value rule applies."  (Emphasis added.)  
Williams-Bowman
, 677 F. Supp. at 545.

We find 
Williams-Bowman
 instructive.  Although the general rule is that tort damages for injury to real property are to be measured by the difference between the market value of the property before the injury and its value after the injury, "rules governing the proper measure of damages in a particular case are guides only and should not be applied in an arbitrary, formulaic, or inflexible manner, particularly where to do so would not do substantial justice."  
Meyers v. Arnold
, 83 Ill. App. 3d 1, 7 (1980).

In 
Meyers v. Arnold
, the court found that plaintiffs were entitled to recover the cost of repairing damages caused by the wrongful dumping of concrete on plaintiffs' property.  
Meyers v. Arnold
, 83 Ill. App. 3d at 8.  The court so reasoned because the realty was held for personal rather than business use, the injury was capable of repair, and the repair could be accomplished without expending amounts wholly disproportionate to the value of the land.  
Meyers v. Arnold
, 83 Ill. App. 3d at 8.  In discussing the proper measure of damages to apply, the court in 
Meyers v. Arnold
 stated:

"[The diminution in market value] measure of damages may be painfully inadequate when the land is held for a personal use such as a family residence and the harm may be corrected with a reasonable expenditure even though the expenditure exceeds the amount the land has diminished in value. *** [Applying the diminution in market value rule] in cases such as the one at bench would inadequately protect plaintiffs' legitimate interest in the use and enjoyment of their property."  
Meyers v. Arnold
, 83 Ill. App. 3d at 7.

The court in 
Meyers v. Arnold
 relied on 
Arras v. Columbia Quarry Co.
, 52 Ill. App. 3d 560 (1977).  The court in 
Arras
 also rejected the application of the diminution in market value rule in a case involving a defendant's blasting activities that destroyed a well located on land where the plaintiffs had lived for almost 30 years.  The court in 
Arras
 held that the damage to the well was temporary and could be abated by drilling a new well.  
Arras
, 52 Ill. App. 3d at 565-66.

Following the reasoning of the courts in 
Williams-Bowman
, 
Meyers v. Arnold
, and 
Arras
, we believe that the permanent/nonpermanent dichotomy is a logical and well-reasoned approach when ascertaining damages in a case of continuing trespass.  However, we are not prepared to apply it at this time to determine whether the injury is permanent or nonpermanent.  We hold that the test for the application of the cost-of-repair measure of damages is (1) whether the damage is to realty held for a personal rather than a business use; (2) whether the injury is capable of repair; and (3) whether the repair can be accomplished without expending amounts wholly disproportionate to the value of the land.  See 
Meyers v. Arnold
, 83 Ill. App. 3d at 8.

In the instant case, the realty is used for a quasi-personal use, that being a church.  Following the reasoning in 
Arras
, the injury is capable of repair because the Church can take preemptive measures to protect itself from further flooding by moving the parking lot and making modifications to its building.  However, because the record contains no evidence of the value of the Church property, we are unable to ascertain whether the repair could be accomplished without expending amounts wholly disproportionate to the value of the land.

We recognize the Tollway’s argument that normally when the plaintiff fails to establish a proper basis for computing damages, he or she is entitled only to recover nominal damages.  See 
Rosos Litho Supply Corp. v. Hansen
, 123 Ill. App. 3d 290, 300 (1984).  In its motion for summary judgment, the Tollway argued that the Church’s damages claim was improper under Illinois law.  The Tollway contended that the appropriate remedy for continuing trespass is the difference in the market value of the real property before the injury versus the market value of the real property after the injury.  The trial court denied the Tollway’s summary judgment motion regarding the damages issue and permitted the Church to proceed to present evidence on the cost-of-repair measure of damages.  In the interest of justice, we believe that a remand to the circuit court to take property value evidence in order to correctly balance damages is more appropriate.  See 
Meade
, 277 Ill. App. 3d at 1023.

The trial court based its damage award on the opinion of probable costs for corrective procedures prepared by Archiplan.  In reviewing this document, we find that the trial court erred in including costs not directly related to the cost-of-repair.  Specifically, the opinion included the cost of demolishing five buildings at a cost of $12,500 per unit, for a total of $62,500; and a cost of $13,050 to remove the existing parking lot.  The record indicates that only one of the five buildings is in the area of the planned parking lot and, further, that the Church does not intend to remove the "wet" parking lot.  Additionally, the new parking lot will be approximately twice the size of the existing parking lot.  Furthermore, repairs to the building include the cost of building an ADA-approved handicapped ramp and railing at a cost of $5,200.  We thus hold that the judgment exceeded the actual cost of repair by at least $68,250, and there may be other costs included that do not properly relate to the cost of repair. 

We therefore vacate the damages portion of the judgment and remand this cause to the trial court with directions to reconsider the cost of repair and to take evidence on the value of the Church realty in order to determine whether the repairs can be accomplished without expending amounts wholly disproportionate to the value of the land.  If the trial court finds that the cost of repairs would not be wholly disproportionate to the value of the Church's land, then the trial court is instructed to reduce the judgment accordingly and add costs of $223.

On the other hand, if the trial court finds that the cost of repairs would be wholly disproportionate to the value of the land, the trial court is instructed to apply the diminution in value measure of damages. 

Accordingly, the judgment of the circuit court of Du Page County is affirmed in part and vacated in part, and the cause is remanded for a proper determination of damages in accordance with this opinion.

Affirmed in part and vacated in part; cause remanded with directions.

BOWMAN and HUTCHINSON, JJ., concur.