29 June 2000

NO. 5-99-0337

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

CLARENCE JACKSON and DAPHANE ) Appeal from the

JACKSON, ) Circuit Court of

) Madison County.  

Plaintiffs-Appellees, )

)

v. ) No. 98-LM-1082

)

TODD BOWERS, d/b/a BOWERS TOWING )

AND REPAIR, ) Honorable

) Wendell Durr, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Defendant, Todd Bowers, doing business as Bowers Towing and Repair (Bowers), appeals from the trial court’s April 8, 1999, order entering judgment on Bowers’ counterclaim for towing and storage fees in the amount of $1,050.  We reverse and remand.

On October 24, 1996, Clarence and Daphane Jackson (the Jacksons) purchased a 1987 Kenworth T800 semi-tractor for approximately $10,000.  The loan was held by Citizens Bank & Trust Company out of Paducah, Kentucky.  The record is silent as to the person or entity from whom the Jacksons purchased the truck.  Although lacking in evidence, the record contains hints that the Jacksons may have purchased the truck from Daphane Jackson’s brother, Jimmie Powers.  For some unknown reason, transfer of the title was delayed.  The record contains reference to correspondence between Citizens Bank & Trust Company and the Illinois Secretary of State’s office in December 1996 at which time the bank sent additional documentation.  On August 11, 1997, title was finally issued in the Jacksons’ name, and it listed Citizens Bank & Trust Company as the lienholder and the entity to whom the original title was sent.

The record indicates that the truck did not get utilized until the summer of 1996.  During that time, the Jacksons improved the truck by adding a sleeper compartment.  In June 1996,  the Jacksons hired Daphane’s brother, Jimmie Powers, as their driver.  Jimmie Powers maintained an Illinois commercial driver’s license.  Clarence Jackson was apparently in school and working towards obtaining his own commercial driver’s license.  Unbeknownst to the Jacksons, Jimmie Powers was wanted on an outstanding federal warrant.
(footnote: 1)  

The Jacksons answered a newspaper advertisement seeking drivers who owned their own tractors.  The company that so advertised was Argosy Transportation, Inc. (Argosy), with offices in St. Louis, Missouri.  The Jacksons did not enter into a written lease with Argosy but agreed to haul one of its trailers.  The first trip for Argosy the Jacksons agreed to make was on June 13, 1997.  We surmise that the trip originated in St. Louis because all Argosy references are to St. Louis, but no evidence was adduced regarding this fact.  Sometime around 4 a.m., Jimmie Powers pulled the Jacksons’ tractor with Argosy’s trailer into a weigh station on northbound Interstate 55 near Litchfield, Montgomery County, Illinois.  As part of the routine checks that are run by the Illinois State Police at the weigh station, law enforcement officials determined the existence of the federal warrant bearing Jimmie Powers’ name.  Somehow, Jimmie Powers was able to leave the area on foot before he was taken into custody.  Jimmie Powers has not been seen since.  He left the tractor and trailer sitting at the weigh station.

From the Illinois State Police tow-in report, we learn many facts.  The Illinois State Police (ISP) sought to have the tractor and trailer towed because of a “K 9 Alert.”  Other possible reasons for towing not checked on the report included accident, abandonment, recovery, seizure as evidence, and seizure for forfeiture.  The vehicle was listed in fair and “running” condition.  The report indicates that the tractor was locked and that the keys were not in it.  Somehow, the ISP determined that Jimmie Powers was the tractor’s owner, by registration.  We do not know if they obtained this information directly from access to Secretary of State records or from license plate registration information provided by Jimmie Powers upon entry to the weigh station.  In a box on the report inquiring of the reporting officer as to the subject vehicle’s eligibility for release, the ISP officer checked “No.”  The balance of that section calls for an explanation of the hold status, which the officer left blank. 

The ISP contacted Todd Bowers of Bowers Towing and Repair to tow the tractor and trailer away.  Bowers towed both to his storage facility in Godfrey, Madison County, Illinois.

On June 15, 1997, Argosy sought, and was allowed, to remove its trailer from Bowers’ facility.  The record’s only reference to a law enforcement “hold” applicable to the trailer is included on the receipt, stating, “Trailor [
sic
] was not on hold.”  How Bowers learned that the trailer was not being held by the ISP is not known.  The only written report relative to the “hold” placed on June 13, 1997, is the above-discussed ISP tow-in report.  Bowers’ receipt relative to the Jacksons’ tractor stated that the “[t]railer was released,” from which it could be inferred that the trailer had in fact been released by the ISP.  Upon release, Argosy was charged a $75 towing fee and three days of inside storage at $15 per day, for a total bill of $120.

At some point, the Jacksons learned that their truck was being stored by Bowers.  They contacted Bowers in an effort to recover their vehicle, only to be told that the ISP maintained a hold on it and that Bowers could not release it to them.  Bowers provided the Jacksons with no written verification of the hold. The Jacksons then contacted and met with an ISP officer in Litchfield to no avail.  They also traveled with their attorney to meet with “police” in East St. Louis.  This trip was also fruitless.

By late August 1997, the Jacksons still had no vehicle, and their attorney wrote a letter to the ISP with a copy to Bowers.  The letter confirmed previous conversations with the ISP in which they advised the Jacksons and their attorney that the ISP maintained a hold on their vehicle.  Enclosed with the letter was a copy of the truck’s title indicating the Jacksons’ ownership since October 1996, eight months prior to the ISP hold.  The letter demanded the release of the truck within seven days and explained that otherwise the Jacksons would have no choice but to file suit seeking the vehicle’s return.

The seven days passed and nothing transpired.  At some point, the Federal Bureau of Investigations (FBI) got involved, and the Jacksons were advised that the FBI maintained a hold on the truck.  The Jacksons and their attorney were never provided with written verification that the FBI had a hold on the truck. In fact, they were never provided with written verification that the State maintained a hold on the truck.  In any event, the Jacksons were advised by the ISP that the ISP was no longer involved in the situation and that the hold now had to be released by the FBI.

The record does not reflect that the Jacksons and/or their attorney took any further formal or informal action to recover the tractor.  In approximately July 1998, everyone consented to the tractor’s release.  The Jacksons, by their attorney, asked Bowers what they owed for towing and storage fees.  The Jacksons were verbally informed by Bowers that to obtain their truck, they would need to pay almost $13,000 in towing and storage fees.  Perhaps to confirm the amount in writing, on August 10, 1998, Bowers wrote to the Jacksons’ attorney, indicating that the total bill as of that date was $1,284, substantially less than the amount quoted by phone.  Bowers also stated that if arrangements were not made within the following 14 days, he would apply for title to the truck.  As anyone would expect given the two quoted figures, the Jacksons brought $1,284 to Bowers, hoping to achieve the release of their truck.  Once Bowers figured out his typographical error, he refused to release the vehicle without payment of the larger amount, $12,840.

The Jacksons filed a suit for replevin against Bowers on August 22, 1998.  Very little discovery took place, and the case was set for a bench trial.  The trial was held on December 17, 1998.

On that date, the trial court allowed very limited, informal testimony from the parties.  In addition to the facts outlined earlier in this opinion, Bowers through his attorney indicated that he stored the Jacksons’ tractor both inside and outside and that he occasionally started the engine.  He carried insurance to cover any losses suffered during the time that the vehicle was in his care.  His fee for towing the tractor was $150, and his daily storage fee was $30.  He acknowledged that he had never stored a vehicle for as long as the time involved in this case.  He was never paid by the ISP or anyone but the vehicle’s owner.  Oftentimes, after several months of storage, the vehicle owner came in and just signed the title to the vehicle over to Bowers.  He has towed extensively for State and local law enforcement personnel since 1976.  He believes that his storage fee of $30 per day is reasonable for the industry, stating that storage prices run generally from $25 to $75 per day.  He was not asked to explain why his fees for towing and storing Argosy’s trailer were exactly one-half of those charged the Jacksons and were less than the amounts that he testified were the industry average.  The Jacksons through their attorney indicated that they did not really dispute that the $30-per-day charge was customary in the field, but they disputed its application in the Jacksons’ situation.  All the income-earning potential of the tractor was obviously lost during the period of this hold.

The trial court entered an interim order concluding that the Jacksons should pay $1,050 to Bowers pending the case’s outcome and that Bowers was to release their truck upon receipt of the payment.  This took place.  The parties were directed to file written arguments.  In Bowers’ argument, Bowers contended that he was owed a total of $16,710 for storage and towing, or $15,660 more than the $1,050 previously paid.

On April 8, 1999, the trial court concluded that the $1,050 amount stood as the judgment of the court.  Bowers appeals.

Generally speaking, the standard of review we apply when a party challenges a trial court’s bench-trial ruling is whether the trial court’s judgment is contrary to the manifest weight of the evidence.  See 
First Baptist Church of Lombard v. Toll Highway Authority
, 301 Ill. App. 3d 533, 542, 703 N.E.2d 978, 984 (1998). Where, as in this case, the trial court’s ruling focuses on statutory construction, we review the matter 
de novo
.  See 
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 183, 710 N.E.2d 399, 400 (1999).  

To begin our analysis of the trial court’s judgment and applicable law, we note that the Illinois Vehicle Code (625 ILCS 5/1-100 
et seq.
 (West 1996)) is replete with references to the owner’s responsibility for towing and storage charges incurred.  Several specific references are contained in this opinion.  The fairness of the application of this rather harsh rule to the Jacksons’ situation is noted.  However, we were not presented with a constitutional challenge, and in any event, we believe that this case between owner and tow operator is not the correct forum for such a challenge.  So long as the rules by which police-

ordered tows are followed, the owners remain liable for towing and storage fees.  If the State of Illinois was a party, as in the case cited by the Jacksons, 
People v. Searle
, 86 Ill. 2d 385, 427 N.E.2d 65 (1981), perhaps the Jacksons would be entitled to some relief relative to the fees assessed.  
Searle 
was a misdemeanor criminal case in which the alleged criminal’s motorcycle was seized by a police agency and stored.  
Searle
, 86 Ill. 2d at 386, 427 N.E.2d at 66.  Because the crime with which Mr. Searle was charged bore its own penalties, the supreme court would not allow the police agency involved to charge him for the storage of his motorcycle, as the storage fees were not a penalty for the crime involved.  
Searle
, 86 Ill. 2d at 389, 427 N.E.2d at 67-68.  Therefore, while interesting, 
Searle
 is inapposite.

Keeping in mind the owner's general responsibility for towing and storage fees, we turn to the trial court’s April 8, 1999, order.  

The trial court initially concluded that section 4-203(g) of the Illinois Vehicle Code (the Code) (625 ILCS 5/4-203(g) (West 1996)) does not apply to this situation.  That subsection allows for the immediate towing of hazardous, dilapidated motor vehicles.  We agree with the trial court’s assessment that this particular subsection does not apply to the facts of this case.  By definition, a hazardous, dilapidated motor vehicle is "any motor vehicle with a substantial number of essential parts *** either damaged, removed[,] or altered or otherwise so treated that the vehicle is incapable of being driven under its own motor power or[] which[,] by its general state of deterioration, poses a threat to the public’s health, safety[,] and welfare."  65 ILCS 5/11-40-3.1 (West 1996).  A hazardous, dilapidated motor vehicle does not include motor vehicles temporarily "incapable of being driven under [their] own motor power" due to the necessity of ordinary service or repair.  65 ILCS 5/11-40-3.1 (West 1996).  As the Jacksons' tractor was simply left unattended by their employee at the weigh station, and since the ISP determined that the vehicle was found to be in a "fair and running condition," we conclude that the tractor was not a hazardous, dilapidated motor vehicle.  

The trial court further questioned the application of section 4-203(a) of the Code (625 ILCS 5/4-203(a) (West 1996)), which allows law enforcement agencies to engage a towing service to remove an abandoned or unattended vehicle left on an interstate highway.  As this tractor was not left on an interstate highway, where it could constitute a public safety danger but was left at a weigh station, the trial court questioned whether or not this subsection provided the authority to tow the vehicle.  We find that by the clear application of the statutory language, this subsection was not intended to apply to weigh stations, even though attendant to an interstate highway.

The trial court concluded that the general nature of section 4-203 of the Code authorizes law enforcement agencies to order the towing of vehicles that in some way impede the operation of a highway system.  We agree with this general interpretation and specifically note that section 4-203(f) of the Code (625 ILCS 5/4-203(f) (West 1996)) seems to apply to this factual setting.  Section 4-203(f) provides, "Any law enforcement agency in the case of publicly owned real property may cause any motor vehicle abandoned or left unattended upon such property without permission to be removed by a towing service without liability for the costs of removal, transportation[,] or storage or damage caused by such removal, transportation[,] or storage."  625 ILCS 5/4-203(f) (West 1996).

The subsection dealing with hazardous, dilapidated motor vehicles is the last subsection of section 4-203 of the Code.  Following that subsection are two paragraphs that we conclude have general applicability to the entire statute, although the layout of the statute is somewhat confusing.  The first such paragraph states, "When a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle shall be responsible for all towing and storage charges."  625 ILCS 5/4-203-11(g) (West 1996).  The second paragraph deals with the towing company’s lien for services and indicates that in no case shall the lien be greater than the rate or rates established in accordance with a statute contained within the vehicle-relocator section of the Code.  See 625 ILCS 5/4-203 (West 1996).

Vehicle relocators are towing services that remove trespassing vehicles from private land.  See 625 ILCS 5/18a-100(1) (West 1996).  Section 18a-200(6) of the Code (625 ILCS 5/18a-200(6) (West 1996)) refers to the setting of reasonable rates for vehicle-relocator services and indicates that the Illinois Commerce Commission (see 625 ILCS 5/18a-100(2) (West 1996)) shall set reasonable rates for police-ordered towing from private property and for the resulting storage.  With respect to storage fees, the statute specifically states that the Illinois Commerce Commission shall "set reasonable rates for the storage, for periods in excess of 24 hours, of the vehicles in connection with the towing or removal; however, no relocator shall impose charges for storage for the first 24 hours after towing or removal."  625 ILCS 5/18a-200(6) (West 1996).  

The Illinois Commerce Commission has set the maximum towing fee for relocator services in Chicago-area counties at $105 (see Illinois Commerce Commission Order, RTV-

A-16, at 5 (November 26, 1996)) and the maximum storage fee after the expiration of the first 24 hours at $15 per day (see Illinois Commerce Commission Order, RTV-A-12, at 2 (December 7, 1988)).

While the rates set by the Illinois Commerce Commission only make reference to Chicago-area counties, we conclude that application of the rates to police-tow situations remains warranted given the plain language of section 4-203 of the Code.  The language related to liens for towing services simply indicates that the rates allowed shall in no way exceed the amounts set by the Illinois Commerce Commission.  See 625 ILCS 5/4-203 (West 1996).  Application of the Illinois Commerce Commission’s rates by the Illinois Commerce Commission in certain geographical areas is not relevant given the police-tow statutes' blanket adoption of those rates.

Ultimately, the trial court determined that Bowers should be allowed to recover something for towing and storing the Jacksons’ tractor.  After concluding that the ISP had at least some authority to tow the Jacksons’ unattended tractor, the trial court read the word "reasonable" into the statute and concluded that $1,050 out of a $16,710 bill was a reasonable fee.  While the statute itself does not include the word "reasonable," the towing-services lien must be in compliance with the rates established by the Illinois Commerce Commission, and the Illinois Commerce Commission requires "reasonable" rates.  See 625 ILCS 5/4-203 (West 1996); 625 ILCS 5/18a-200(6) (West 1996).  We agree with the trial court’s assessment of the need for "reasonable" rates.

We conclude that, at a minimum, Bowers should be reimbursed for towing the vehicle.  Because the Jacksons did not cross-appeal the amount of the judgment entered, Bowers can recover no less than the $1,050 amount.  However, the trial court’s determination of a reasonable rate presumably was somewhat arbitrarily determined, in that there is no explanation in the court’s order of the basis for the award.  There does not appear to be any dispute that Bowers maintained a lien against the Jacksons’ tractor in the amount of the towing and storage fees accrued.  In fact, at one point, Bowers even threatened to apply for title to the Jacksons’ property in satisfaction of the amount.  In such a situation, the police-

tow statutes dictate that the maximum amounts that can be assessed against an owner are the rates established by the Illinois Commerce Commission for vehicle-relocator services.
(footnote: 2)  Because we do not believe that the trial court considered the rates established by the Illinois Commerce Commission in determining what the Jacksons owed Bowers, we must remand this case for reconsideration of the amount to which Bowers is entitled.

In its order, the trial court was also concerned with whether or not Bowers had the requisite authority to hold the Jacksons’ tractor.  Section 4-204 of the Code (625 ILCS 5/4-

204 (West 1996)) indicates that any hold order must be in writing, or confirmed in writing, and that the towing service must be provided with a copy.  In other words, if there is no written documentation authorizing the hold, the towing service has no authority to hold the vehicle.  The trial court found documentary evidence in this case to be lacking, as there was only a box checked on the ISP tow-in report, indicating that the tractor was not eligible to be released.  While not much of a piece of documentary evidence, the report could suffice as a writing authorizing Bowers’ hold, even though the explanation portion of the "hold" section was left blank.  However, we do not know whether or not Bowers ever had a copy of this report.  From the record, it seems that he was merely verbally directed to hold the tractor.  If so, unless subsequent written documentation was forwarded to Bowers, Bowers lacked authority to hold the Jacksons’ tractor.  Furthermore, once the FBI became involved in continuing the hold, we seriously question whether Bowers could continue to hold the vehicle, absent a separate written documentation.  Section 4-204 of the Code explicitly states that "any hold" must be in writing.  625 ILCS 5/4-204 (West 1996).  Did Bowers have written documentation from the FBI?  The record is silent.  We agree with the trial court’s assessment that the towing company is in a much better position to ascertain and obtain the requisite documentary proof necessary to continue holding a vehicle, for which it expects to be handsomely reimbursed.  Accordingly, when this matter is remanded, this issue must be addressed by the trial court in determining the amount to which Bowers would be entitled for towing and storage fees. 

Bowers also contends that the trial court’s comments in its order revealed a hidden prejudice and that the judge should have recused himself from the case before hearing and/or deciding the case.  As this case is being remanded, Bowers asks us to remand the case directly back to the chief judge of the Madison County Circuit Court for reassignment.  

Typically, requests for assignment to a different judge are made during the pendency of the case in the trial court.  Accordingly, the Jacksons argue that Bowers waives any such argument on appeal.  Because the perceived prejudice Bowers believes the trial judge harbored against him did not surface until the date when judgment was entered, we agree with Bowers that this situation is unique.  We agree that the matter can be addressed on appeal.

We have carefully reviewed the record, including the transcript of the proceedings leading up to the judgment.  The only comment in the five-page order to which Bowers objects is as follows: "Surely the citizens, the sovereign power in this nation, are entitled to something more than to be viewed simply as targets for the predations of government and its private enterprise henchmen."  The statement standing alone does sound somewhat harsh, but it cannot be viewed in isolation.  The comment came towards the end of the order in which the judge is simply explaining that Bowers, who had ongoing and repetitive ties to various law enforcement entities, was in a better position to insure that he had the statutorily required paperwork necessary to hold the Jacksons' tractor.  After all, if he did not have documentary evidence of a law enforcement hold on the tractor, he had absolutely no authority to prevent the Jacksons from collecting their property upon payment of the towing and short-term storage fees.  See 625 ILCS 5/4-204 (West 1996).

Accordingly, viewing the record in its entirety, other than the complained-of sentence, there is nothing to indicate that the judge was prejudiced against Bowers.  Furthermore, the comment cannot be read in isolation, and when read in its proper context, it is not, without more, indicative of prejudice.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

GOLDENHERSH, P.J., and HOPKINS, J., concur.

FOOTNOTES
1:
The nature of the crime with which Jimmie Powers was charged is not known.  In a pleading, counsel for defendant alludes to charges for illegal drug trafficking, but there is absolutely no evidence in the record detailing the type of charges involved.

2:
We find it interesting that the rates Bowers charged Argosy for towing and storing its trailer were consistent with the rates established by the Illinois Commerce Commission.