(No. 93436.—

*In re* MARRIAGE OF CATHERINE MURPHY, n/k/a Catherine Madonia, Appellant, and MICHAEL R. MURPHY, Appellee.

*Opinion filed January 24, 2003.*

Dawn D. Behnke, for appellant, and Catherine Madonia, appellant *pro se*, both of Springfield.

Michael R. Murphy, of Springfield, appellee *pro se*.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal concerns a circuit court's award of attorney fees for a *prior* appeal in this dissolution of marriage action. After remand from an earlier appeal, Catherine Murphy—now known as Catherine Madonia (Catherine)—petitioned the circuit court to award her the attorney fees she had incurred in prosecuting that appeal. The trial court awarded her a portion of the fees she requested. Michael Murphy appealed that award, contending that Catherine had not "substantially prevailed" in the earlier appeal and, alternatively, that the trial court had no evidence to support the award. The appellate court reversed, with one justice dissenting. 327 Ill. App. 3d 845. Catherine has brought the instant appeal from that judgment. We reverse in part and remand.

## BACKGROUND

Catherine filed a petition for dissolution of marriage

in July 1990. The circuit court granted Catherine custody of the parties' child, subject to Michael's reasonable visitation, and ordered Michael to pay $600 per month in child support, as well as to maintain medical insurance for the child and pay his tuition and fees for a parochial school education. The court also divided the marital assets, the largest of which was a personal injury settlement resulting from an incident in which Michael was shot and permanently paralyzed from the chest down. The settlement consisted of a one-time lump-sum payment and guaranteed annual future payments. The court awarded Catherine the marital residence and a lump sum of $220,000, but awarded all future payments under the settlement to Michael as marital property. Catherine appealed, and the appellate court affirmed the circuit court's order of dissolution. *In re Marriage of Murphy*, 259 Ill. App. 3d 336 (1994).

In January 1994 Catherine filed a motion to modify child support, alleging Michael's salary had increased. In November 1998 the court entered an order increasing Michael's child support obligation to $850 per month, retroactive to January 1998. Catherine appealed this order, arguing that the trial court had erred (1) by failing to award her attorney fees, and (2) in its modification of the child support obligation. The latter contention actually was comprised of three specific alleged errors in the circuit court's treatment of the case: (a) the conclusion that the law of the case doctrine precluded the court from considering the annuity payments as part of Michael's net income for purposes of setting child support; (b) the court's downward departure from the statutory child support guidelines; and (c) the court's decision to make the modification retroactive only to January 1998. The appellate court held that the circuit court erred in departing downward from the statutory guidelines and reversed and remanded on this issue, but affirmed

the circuit court in all other respects. *In re Marriage of Murphy*, No. 4—99—0215 (2000) (unpublished order under Supreme Court Rule 23).

In September 2000, Catherine filed a motion requesting that Michael reimburse her for attorney fees she incurred in prosecuting her appeal of the November 1998 order. In the motion, she contended that: she engaged counsel for purposes of the appeal; she successfully argued that the downward deviation was erroneous; her income was significantly below Michael's; Michael was unrepresented on appeal; and the amount her counsel charged was reasonable and customary for the preparation and argument of an appeal. The motion also stated that a multipage exhibit attached to the motion showed the "time expended by counsel and his rate and expenses for the preparation and argument on the appeal." That attachment consists of an apparently computer-generated time sheet, with an anonymous handwritten notation on the first page which states: "Fees & Expenses Incurred $7199.35."

Michael argued before the circuit court that Catherine had prevailed "only in minor part" in her appeal, and further argued that Catherine was "well able" to pay her own fees, in light of her net worth of approximately $500,000. He also noted that in the appeal of the November 1998 order the appellate court had rejected Catherine's argument that the circuit court had erred in failing to award her attorney fees for the prior circuit court litigation. He contended that Catherine had alleged no change in circumstances since the entry of the appellate court's order which might impact on the parties' abilities to pay their own attorney fees.

In October 2000, the circuit court held a hearing on this motion as well as Catherine's motion to "implement the mandate" of the appellate court. The following is the only testimony adduced regarding the motion for attorney fees:

"Q. State your name.

A. Catherine Madonia.

Q. And now, Miss Madonia, when you prosecuted the appeal, did you incur attorney's fees?

A. Yes, I did.

Q. And have you paid those attorney's fees?

A. No. I paid some of them, part of them. Not all of them.

Q. And you entered into an agreement with me for an hourly rate as set forth in our motion?

A. Yes, I did."

Michael argued again at the hearing and in a post-trial motion that any award of attorney fees to Catherine would be inappropriate because (1) Catherine had only prevailed in minor part in the prior appeal, and (2) she had shown no change in her financial circumstances since the last hearing on attorney fees, when the court declined to award fees to Catherine. At the hearing, counsel for Catherine replied that "This isn't a 1983 or 1988 case [*sic*, presumably referring to 42 U.S.C. § 1983 and 42 U.S.C. § 1988] where you have to be the prevailing party. Either party may seek to have the other party pay based upon the income, not based upon their assets."

The circuit court took the motion under advisement, and ultimately awarded Catherine $1,750 in attorney fees. No written order appears in the record, but the court's docket entry states with respect to this issue that "Upon consideration of all relevant statutory factors, the Court awards [counsel for Catherine] the sum of $1,750.00 for fees on appeal."

Michael appealed, and the appellate court reversed, with one justice dissenting. 327 Ill. App. 3d 845. The court reached only Michael's first argument, that Catherine had not "substantially prevailed" in her earlier appeal. The court noted that interpretation of the phrase was a matter of first impression. After looking to other Illinois statutes as well as federal law, the court demurred from issuing a definitive pronouncement as to what it

would mean for a party to "substantially prevail," but stated that "whatever it means, Catherine did not substantially prevail on her appeal." The court stated that the issue on which Catherine obtained relief made only a relatively minor monetary difference, as compared to the relief potentially available if Catherine had prevailed on the other issues she had raised. The court averred that its determination was not based merely on the numerical fact that she had prevailed on only one of the four issues she raised on appeal. However, the court went on to state that to "substantially prevail" did "suggest[ ] that one has to obtain at least 50% of the relief she seeks."

The dissent noted that section 508(a)(3.1) of the Illinois Marriage and Dissolution of Marriage Act was added in 1997, as part of a "complete overhaul of the fee provisions of" the Act, intended to achieve " 'substantial parity in parties' access to funds for litigation costs.' " 327 Ill. App. 3d at 853-55 (Cook, J., dissenting), quoting 750 ILCS 5/102(5) (West 1998). The dissent criticized the "majority's requirement that there be an overwhelming victory before attorney fees can be awarded" as contrary to the spirit of the 1997 amendments, "which sought to prevent the situation where an economically disadvantaged spouse is forced to 'cave in' to a truly unfair settlement." The dissent contended that the "majority's new rule, that 'one has to obtain at least 50% of the relief she seeks' before attorney fees may be awarded" was without support in the statute or case law and further was objectionable in that

> "If a party has a legitimate basis for appeal we should not attempt to discourage that party from raising other issues as well, even though the party thereby risks obtaining less than 50% of the relief sought. The appellate court should attempt to provide guidance on troublesome issues, not penalize parties for raising issues other than sure winners." 327 Ill. App. 3d at 854-55 (Cook, J., dissenting).

Finally, the dissent noted that the trial court's determination regarding fees was entitled to deference and should not be overturned absent an abuse of discretion. The dissent closed with the following observation:

"The argument could be made that this court is as well-qualified as the trial court to determine whether a party has 'substantially prevailed' on appeal. However, we have recently ruled that we have no jurisdiction over attorney fees on appeal. *In re Marriage of Baylor*, 324 Ill. App. 3d 213, 216 (2001)." 327 Ill. App. 3d at 855 (Cook, J., dissenting).

We granted Catherine leave to appeal. 177 Ill. 2d R. 315(a).

## ANALYSIS

Before this court Catherine contends, relying on the last sentence of the appellate court dissent, that the appellate court was without jurisdiction to reverse the circuit court's fee award. She also argues that the circuit court's fee award was not an abuse of discretion and should be affirmed.

### I. Jurisdiction

We find the jurisdictional argument to be without merit. It is important to note that this case does not involve the question whether the appellate court has jurisdiction to make an initial *award* of fees. That was the question the appellate court addressed in *Marriage of Baylor*, the case cited by the appellate court dissent. We express no opinion on this question, because it is not germane to this case—the appellate court did not purport to make a fee award. All the appellate court did in this case was *review* the circuit court's final order awarding attorney fees. There is no question that the appellate court has jurisdiction to review an award of attorney fees in the context of an otherwise valid appeal.

### II. Propriety of Award

The appellate court determined that the circuit court

erred in awarding Catherine attorney fees, because Catherine did not "substantially prevail" in her prior appeal. Catherine argues that the circuit court's order is entitled to deference and the appellate court erred in overturning the fee award in this case.

In our view, the threshold question in this case is one of statutory construction, determining the meaning of the statute in question, section 508(a)(3.1) of the Act. *Cf. Hamer v. Lentz*, 132 Ill. 2d 49, 57-63 (1989) (attorney fees under section 11(h) of the Illinois Freedom of Information Act). Construction of a statute is a purely legal question, appropriately subject to *de novo* review. See, *e.g., Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). Upon review, we disagree with the appellate court's construction of section 508(a)(3.1).

The guiding principles which inform our task of statutory construction are well settled. Our lodestar is the intent of the legislature. We may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims. We are also guided by the presumption that the legislature did not intend an absurd or unjust result. However, our inquiry always must begin with the language of the statute, which is the surest and most reliable indicator of legislative intent. Statutory language must be given its plain and ordinary meaning, and where the statute is clear and unambiguous, we have no occasion to resort to aids of construction. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Where possible, we will adopt that construction which will give effect to every word, clause, and sentence; we strive to read statutes so as not to render any portion inoperative or superfluous. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Nor, under the guise of statutory interpretation, can we "correct" an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language. *Pullen*, 192 Ill. 2d at 42.

Section 508(a) of the Act provides as follows:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in accordance with subsection (c—1) of Section 501. At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503. Fees and costs may be awarded to counsel from a former client in accordance with subsection (c) of this Section. Awards may be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(3.1) *The prosecution of any claim on appeal (if the prosecuting party has substantially prevailed).*

(4) The maintenance or defense of a petition brought under Section 2—1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

(6) Ancillary litigation incident to, or reasonably connected with, a proceeding under this Act." (Emphasis added.) 750 ILCS 5/508(a)(1) through (a)(6) (West 1998).

The appellate court treated section 508(a)(3.1) as if it referred to "the prosecution of any *appeal*" in which the appellant substantially prevailed. It does not so read. Rather, section 508(a)(3.1) allows the circuit court to award fees for the "prosecution of any *claim on* appeal (if the prosecuting party has substantially prevailed)."

(Emphasis added.) 750 ILCS 5/508(a)(3.1) (West 1998). Inclusion of this claim-specific language can hardly have been inadvertent, as such language is found in no other subsection of the statute. To the contrary, all other subsections speak in general of actions with respect to "proceedings," "orders," or "judgments." See 750 ILCS 5/508(a)(1) through (a)(6) (West 1998). Only with respect to the prosecution of an appeal, does the statute specifically tailor attorney fee awards to individual *claims* and impose the additional requirement that the appellant "substantially prevail" in any claim before the circuit court may consider ordering the opposing party to reimburse him for his attorney fees expended thereon.

We believe that the appropriate reading of this section is that, in the context of a petition for fees for prosecution of an appeal, the circuit court may only award fees incurred for *those individual claims* on which the appellant can be said to have "substantially prevailed" on appeal. To interpret the statute as requiring that the appellant prevail on the appeal as a whole would read out the phrase "claim on," which is contrary to our settled rules of construction.

Our interpretation has other virtues in addition to comporting with the plain language of the statute, giving effect to all of the words penned by the legislature. First, it eliminates the difficulty which the appellate court frankly confronted, of determining how much relief the appellant must obtain in a multiissue appeal so as to "substantially prevail." This is difficult in any multiissue appeal; it would be far more difficult in an appeal in which one or more of the claims involved nonmonetary concerns—as is frequently the case in dissolution proceedings. It is a discomforting prospect to require the circuit court to determine whether a party "substantially prevailed" in an appeal in which he succeeded in overturning the child support amount but failed in his

appellate claim that he should receive visitation. Although we acknowledge that it still may at times be more of an art than a science for a court to determine whether an appellant has substantially prevailed with respect to an individual issue, the difficulty will be lessened if the court is not required to weigh the relative import of issues raised.

Second, our construction neither discourages meritorious appeals nor encourages frivolous ones. The appellate court dissent was concerned that a rule should not discourage a party from raising all possible issues on appeal, for fear of losing possible reimbursement for fees expended on "sure winners." Although we note that the general rule in the United States is that parties pay their own fees (see, *e.g., In re Marriage of McGuire*, 305 Ill. App. 3d 474, 479 (1999) ("As a general rule, attorney fees are the primary responsibility of the party for whom the services are rendered")), we acknowledge the sentiment expressed.

Our construction of the statute obviates this concern. An appellant may petition for fees incurred in the prosecution of any issue on which he substantially prevailed on a prior appeal, regardless of how many other issues may have been raised. However, awarding appellate fees on a claim-by-claim basis also removes any affirmative incentive for a party to add frivolous issues on appeal along with meritorious issues, in hopes of increasing the fees which his opponent may be required to pay. By our construction of the statute a party may raise any claims he desires on appeal. While the circuit court may award fees for issues deemed meritorious by the appellate court, no recompense will be had for preparation of claims on which the appellate court determined not to grant relief.

In this case, the determination whether Catherine "substantially prevailed" on her individual claims is

quite simple. She obtained no relief whatsoever on three of the issues she raised and obtained all of the relief she sought on the remaining issue. Clearly, she substantially prevailed on the "departure from the statutory guidelines" claim and only that claim. Thus, the circuit court could only award her the fees incurred for the prosecution of that claim. Therefore, the appellate court's conclusion that Catherine did not "substantially prevail" was correct with respect to three issues, but was erroneous with respect to the fourth.

We remand to the appellate court for consideration of Michael's remaining argument.

## CONCLUSION

For the reasons above stated, we reverse in part the appellate court's holding that Catherine did not "substantially prevail" on her prior appeal and remand to the appellate court.

*Appellate court reversed in part;*
*cause remanded.*