NOTICE
Decision filed 04/09/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180251-U

NO. 5-18-0251

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CHERYL L. DRUSE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 97-F-343 |
| | ) | |
| SCOTT M. SCHURMAN, | ) | Honorable |
| | ) | Julia R. Gomric, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the trial court's order awarding attorney fees was based on noncompliance with discovery rules and court orders, in keeping with section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2016)), we affirm the order. Where the trial court did not abuse its discretion in awarding postsecondary education costs and maintenance pursuant to section 513(a) of the Act, but did not comply with the statutory end dates for these awards, we affirm the awards but remand that portion of the secondary education expense and maintenance awards with directions to amend the order to comply with the statutory end date. Where Illinois law does not allow credit for voluntary overpayments of child support, we affirm the trial court's order denying Schurman's request.

¶ 2    Cheryl L. Druse (Druse) and Scott M. Schurman (Schurman) were never married but had a daughter born in 1997. The trial court entered an order of child support in 1998 and a second order that increased the amount of child support in 2001. Over the years the child support amount was increased in amounts to which Druse and Schurman agreed. Those increases were not

1

formalized by court orders. In this case, Druse sought an award of back child support and awards for postsecondary education expenses and maintenance for their daughter. The trial court entered awards in Druse's favor for back child support, postsecondary education expenses and maintenance, and attorney fees. Schurman appeals from the trial court's March 26, 2018, order.

¶ 3                                    FACTS

¶ 4     Druse and Schurman's daughter, Jenna, was born on September 4, 1997. In late November 1998, the trial court entered an order setting child support at $116.31 every two weeks. Druse was ordered to provide health insurance for Jenna. Any medical, dental, and optical expenses not covered by the insurance were to be divided equally between the parties. The child support amount was increased to $150 every two weeks in a stipulated order entered by the trial court on May 1, 2001. Schurman voluntarily increased the bi-weekly amount to $225 on January 1, 2009, and increased the bi-weekly amount to $245 on January 1, 2011. Neither of these increases were formalized with an order entered by the trial court. Beginning in December 2014, the Illinois Department of Children and Family Services began withdrawing child support payments from Schurman's paychecks. The amount withdrawn matched the last court-ordered child support amount of $150 every two weeks (or $69.23 per week).

¶ 5     Druse filed a petition for contempt and an accounting on February 24, 2015, alleging that Schurman was not paying the correct amount of child support. Druse also filed a current financial affidavit in which she stated that her monthly gross income was $4165; equity in her home was $35,169; equity in two investment accounts totaled more than $88,000; a bank account balance of $2500; and an outstanding debt of $934 owed to Southwestern Illinois College for Jenna's spring 2015 college tuition.

¶ 6    In January 2016, Druse filed a petition for postsecondary education expenses. In the petition, she stated that Schurman had a 529 educational expenses account for Jenna's benefit and that she and Jenna did not have sufficient assets or income to support themselves and pay for Jenna's college expenses. Jenna filed her own affidavit in support of her mother's petition in which she stated that she lived with her mother in O'Fallon, was a full-time student at Southwestern Illinois College in Belleville, and worked at Chevy's Restaurant in O'Fallon earning approximately $643 per month.

¶ 7    At some point, Schurman filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court. The state trial court ordered Schurman to produce all documents and to provide information regarding the status of the bankruptcy. Because of the bankruptcy stay that precluded Druse's collection action against Schurman in state court, Druse hired counsel to file a request in the bankruptcy court to lift the automatic stay. Druse was successful in lifting the automatic stay which allowed her to procced with the child support and postsecondary education expenses and maintenance case in the state trial court. Druse incurred $676 in legal fees associated with representation in Schurman's bankruptcy case.

¶ 8    In early May 2016, Druse filed a motion seeking the release of the funds in the 529 educational expenses account established for the benefit of Jenna. On June 21, 2016, the trial court entered an order instructing Schurman to utilize the funds from the 529 account to pay Jenna's tuition, fees, and book expenses for her attendance at Southwestern Illinois College.

¶ 9    In September 2016, Schurman's attorney withdrew from the case. Thereafter, Schurman proceeded without legal representation.

¶ 10   The trial court learned that Schurman was expecting large income tax refunds. On November 15, 2016, the trial court entered an order enjoining and restraining Schurman from

"endorsing, depositing, transferring or otherwise encumbering or disposing the tax refunds attributable or received individually or jointly w[ith] another for the taxable year 2015 (which includes both state [and] federal) and upon receipt of said checks from a government entity shall send copies thereof to [Druse's attorney]."

¶ 11    In court testimony, Schurman informed the court that he presented the income tax refund checks to the bankruptcy trustee. Schurman later changed this statement and admitted that he used all of the 2015 refunds for personal use. Then, in 2017, Schurman received federal and state income tax refunds for 2016 totaling $8314. Schurman testified that he used the 2016 income tax refunds to make mortgage payments on his house.

¶ 12    After a hearing on October 3, 2017, the trial court held Schurman in contempt of court for lying under oath about his 2015 income tax refunds and for his willful violation of the court's November 15, 2016, order. In this order, the court noted that Schurman did not admit to his misrepresentation until after he was confronted with documentary evidence at the hearing.

¶ 13    In this same order, the trial court held Schurman responsible to pay all of Jenna's tuition, fees, and book expenses retroactive to the date of filing. The court further ordered Schurman to pay Druse's attorney her fees "for having to bring this matter before the Court."

¶ 14    On November 16, 2017, the trial court entered its order responding to all outstanding issues—child support, other postsecondary education expenses and maintenance, and attorney fees.

¶ 15    Child support was a complicated issue in this case. The trial court set child support at a rate of $150 per week, $650 per month, and $7800 per year retroactive to January 1, 2010—an approximate date when Schurman began working for a new employer at a higher rate of pay. The court ordered child support from the January 1, 2010, date until February 23, 2015, the date that

4

Druse filed her petition. Schurman paid $69.23 in weekly child support (based upon the November 1998 child support order) from December 30, 2014, through February 23, 2015, in automatic withdrawals from his paychecks, instead of the proper amount of $150 he had been paying each week. Therefore, he owed arrearage for those eight weeks totaling $646.16. The court made a finding that Schurman's 2015 gross income was $79,829.11 with an income tax refund of $7213, and that from February 23, 2015, until Jenna graduated from high school on May 17, 2016, the correct weekly child support rate should have been $238.71, resulting in a $10,154.42 deficiency. In conclusion, the trial court found that Schurman owed $20,872.35, plus $6744.94 in interest through September 2017. The court entered judgment in the principal amount, noting that interest would continue to accrue at the 9% statutory rate per year.

¶ 16     The trial court awarded Druse postsecondary education expenses for Jenna's tuition, fees, and book expenses. Schurman was ordered to pay one-half of those expenses on a monthly basis until Jenna graduates from college. The trial court also ordered Schurman to pay Jenna $400 per month in maintenance retroactive to June 15, 2016 (approximately one month following high school graduation) through the date of her college graduation. The court entered judgment against Schurman in the amount of $6800 for monthly maintenance arrearage.

¶ 17     On other issues, the trial court determined that Jenna should remain on her mother's health insurance coverage. In addition, the court ordered Schurman to pay one-half of that insurance coverage on a monthly basis from the date Jenna graduated from high school on May 17, 2016, to the date of the order. The court found that Schurman owed Druse the amount of $563.90, representing one-half of Jenna's out-of-pocket medical expenses, and entered judgment in Druse's favor in that amount. The court also ordered Schurman to pay his half of all future out-of-pocket medical, dental, optical, orthodontic, and prescription expenses within 30 days of the date Jenna

incurred the expenses. The court ordered Schurman to pay one-half of Jenna's car insurance on a monthly basis until she graduates from college, and to reimburse Druse for one-half of those expenses from February 23, 2015, until the date of the order. The court found that Schurman had not made any contribution to Jenna's 529 educational investment account, that Schurman's parents had made all contributions to the account, and that those contributions constituted gifts to Jenna.

¶ 18    Finally, the court ordered Schurman to pay Druse $11,192.81 to reimburse her for attorney fees and costs. That amount included the prior sum of $1486.09 ordered to be paid in the court's October 3, 2017, contempt order, as well as the $676 Druse paid to a bankruptcy attorney in order to be legally allowed to proceed with this state court case.

¶ 19    On March 26, 2018, the trial court entered an amended order. The court found that because the parties had agreed to $300 in child support per month as of May 1, 2001, that there could be no arrearage owed by Schurman for the period from January 1, 2010, through February 28, 2015. The court noted that from May 1, 2001, through February 28, 2015, Schurman had voluntarily paid $29,332.07, which was more than the court-ordered $18,600 in child support owed during that time frame. The court determined that Schurman would not receive any credit for overpayment. The court's amended order also recalculated the retroactive child support Schurman owed from March 1, 2015, to May 17, 2016, at $10,034.98 (down from $10,154.42), and entered judgment against Schurman in that amount with interest accruing from the date of the order. The trial court kept the postsecondary education maintenance award at $400 per month until Jenna graduates, but entered judgment in the amount of $8800 against Schurman representing $400 per month from May 17, 2016, until March 31, 2018. The court kept the attorney fees award at the same amount— $11,192.81.

¶ 20    On April 23, 2018, Schurman filed his notice of appeal.

¶ 21                              ANALYSIS

¶ 22    On appeal, Schurman raises issues regarding the awards of attorney fees, postsecondary education expenses, car insurance expenses, health and related insurance expenses, and monthly maintenance. He also claims that the trial court erroneously disallowed credit for excess child support payments to be applied towards the child support arrearages.

¶ 23                            Attorney Fees

¶ 24    A court's award or denial of attorney fees will not be disturbed absent an abuse of discretion. *In re Marriage of Uehlein*, 265 Ill. App. 3d 1080, 1090, 638 N.E.2d 706, 715 (1994). "[D]etermining whether the circuit court applied the correct standard when it awarded the fees requires interpretation of section 508 of the Act, which is a legal question that the court reviews *de novo*." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13, 89 N.E.3d 296 (citing *In re Marriage of Murphy*, 203 Ill. 2d 212, 219, 786 N.E.2d 132, 136 (2003)). In interpreting section 508 of the Act, the trial court " 'must ascertain and give effect to the intent of the legislature.' " *Id.* (quoting *In re Marriage of King*, 208 Ill. 2d 332, 340, 802 N.E.2d 1216, 1220 (2003)). The court must review the plain language of the statute at issue, and if that language is clear and unambiguous, then the court must apply the statutory language without resorting to other construction aids. *Id.* However, if the language is ambiguous, then the court may apply other sources in order to determine the legislature's intent. *Id.*

¶ 25    Schurman contends that the trial court did not consider his financial situation before entering its attorney fees award as required by section 508 of the Act. 750 ILCS 5/508 (West 2016). Section 508(a) provides as follows: "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for *** the other party's costs and attorney's fees." *Id.* § 508(a). The statutory language

7

directs the court to section 503(j) for further instructions on awarding attorney fees and costs at the conclusion of the case. *Id.* Section 503(j) provides that "[a]fter proofs have closed in the final hearing on all other issues between the parties *** and before judgment is entered, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided *** based on the criteria for division of marital property *** and, if maintenance has been awarded, on the criteria for an award of maintenance." *Id.* § 503(j)(2). An award of attorney fees pursuant to section 508(a) mandates a hearing and a determination of financial ability as Schurman claims. However, we do not find that the trial court utilized section 508(a) as the statutory authority for entry of the attorney fees award against Schurman.

¶ 26    In addition to section 508(a), section 508 provides an alternate basis for an award of attorney fees. Section 508(b) of the Act allows a trial court to award attorney fees for noncompliance with orders and judgments. *Id.* § 508(b). According to the statutory language of section 508(b), the trial court is not mandated to conduct a hearing before its entry of an award. If there are issues with a party's compliance with an order or judgment and the court concludes that the party's failure to comply was without compelling cause or justification, "the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." *Id.* "If non-compliance is with respect to a discovery order, the non-compliance is presumptively without compelling cause or justification, and the presumption may only be rebutted by clear and convincing evidence." *Id.*

¶ 27    Here, the trial court awarded fees consistent with section 508(b) of the Act as the result of Schurman's repeated failures to comply with discovery and the court's direct orders. We have thoroughly reviewed the record on appeal and find that the trial court's order awarding Druse attorney fees was appropriate and did not constitute an abuse of the trial court's discretion. We

8

briefly summarize Schurman's repeated lack of compliance with discovery requests and trial court orders.

¶ 28    Druse filed the underlying case in late February 2015. By August 2015, she was forced to file a motion to compel and for sanctions against Schurman as he would not comply with discovery and would not file his financial affidavit. In September 2015, the court ordered him to file his financial affidavit within 15 days and reserved the issue of Druse's request for attorney fees. Discovery continued to be an issue between the parties. Druse was aware that there was a 529 investment account established for Jenna's educational costs, but Schurman would not provide her with information about the account or provide Jenna with educational funding from the account. In February 2016, because Schurman had filed a petition for bankruptcy, the trial court cancelled the February trial setting. The court ordered Schurman to produce all documents about the 529 account, as well as documents regarding his bankruptcy court case. Druse hired a bankruptcy attorney in order to ask the bankruptcy court to lift the automatic stay so that she could proceed with her postsecondary education expenses claim against Schurman without violating bankruptcy laws. By May 2016, Schurman had still not released any educational expense funding from the 529 account. Druse then filed a separate motion asking the court to order the release of funding from Jenna's 529 account. The trial court ultimately found that Schurman made zero contributions to the account—that his family made all the 529 contributions on Jenna's behalf and that those contributions constituted gifts. In June 2016, the trial court ordered Schurman to file the Free Application for Federal Student Aid (FAFSA) form before the deadline and to provide a copy of his filing to Druse. Schurman did not do so. Schurman later testified that he never filled out the form. In November 2016, the trial court barred Schurman from utilizing his income tax refunds. Schurman initially testified that he had turned over the refund checks to the bankruptcy trustee.

9

Later after the evidence was reopened, Schurman provided additional testimony, admitting that his previous testimony was not truthful and that he had cashed the refund checks and spent the funds. The trial court also ordered Schurman to come to court with his income tax returns since he had not provided them earlier in discovery. He did not bring the returns. The trial court delayed the hearing in order to allow Schurman's wife the opportunity to go home to retrieve the income tax returns.

¶ 29    We find that the trial court's order awarding Druse's request for attorney fees was well within the court's discretion as well as the statutory mandates of section 508(b) of the Act given Schurman's flagrant and consistent disregard of established discovery rules as well as trial court orders. The trial court directed Druse's attorney to file an affidavit outlining her fees and costs. She did so. From our review of this document, a large percentage of the attorney fees charged related to efforts to obtain discovery from Schurman and Schurman's compliance with court orders. Based upon newly discovered evidence related to Schurman's bankruptcy case and testimony, the trial court was forced to reopen proofs. That process resulted in an expected increase in Druse's legal fees. Not only did Schurman fail to comply with trial court orders, but in the case of his income tax returns, he lied under oath at the hearing about how the refunds were utilized. We find that Schurman's failure to comply with the trial court's orders was "without compelling cause or justification." 750 ILCS 5/508(b) (West 2016). Accordingly, we affirm the attorney fees award.

¶ 30      Postsecondary Education Expenses and Monthly College Student Maintenance

¶ 31    Pursuant to section 513 of the Act, the trial court has the discretion to award postsecondary education expenses for a nonminor child. 750 ILCS 5/513 (West 2016). Education expenses are broken into different categories. The actual costs of the child's tuition and fees and on- or off-

10

campus housing expenses may be awarded so long as the amounts do not exceed the amounts charged to a University of Illinois at Urbana-Champaign student. Books and supplies to attend college may also be awarded. The trial court may award the actual costs of all medical and dental expenses, including insurances. Finally, the trial court may award the "reasonable living expenses" of the child. If the child is living with one of the parties, the living expenses would "include an amount that pays for the reasonable cost of the child's food, utilities, and transportation." Section 513(a) of the Act states as follows:

> "The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the educational expenses of any child of the parties. Unless otherwise agreed to by the parties, all education expenses which are the subject of a petition brought pursuant to this Section shall be incurred no later than the student's 23rd birthday, except for good cause shown, but in no event later than the child's 25th birthday." *Id.* § 513(a).

¶ 32    In this case, Druse filed her petition seeking these expenses pursuant to this section. There is no agreement in the record as to postsecondary education expenses. While the trial court may award postsecondary education expenses, to include the medical and other insurance expenses, noncovered medical and related expenses, car insurance expense, as well as tuition, fees, and book expenses, the statute limits the trial court's ability to award those benefits by setting out a timeframe for completion. The trial court does not have the discretion to award those expenses on an infinite basis. The statute expressly limits these awards. Postsecondary education expenses awards must end on the child's twenty-third birthday unless good cause is shown to extend that end date. We affirm that portion of the court's order directing Schurman to pay all these education-related expenses and maintenance. However, the statutory language is plain and unambiguous and therefore must be followed. *Jordan v. O'Fallon Township High School District No. 203 Board of Education*, 302 Ill. App. 3d 1070, 1079, 706 N.E.2d 137, 143 (1999) (citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990)). We remand this issue to the trial court for entry

11

of an amended award for these expenses ending upon graduation from a traditional four-year program or the child's twenty-third birthday, whichever event occurs first. By amending the order in this manner, the order would follow the legislature's intent.

¶ 33    Schurman also claims that the trial court did not consider his financial situation at the time of this order and asks this court to reverse the court's order of postsecondary education expenses awards. We disagree.

¶ 34    Section 513(j) of the Act states that the court must "consider all relevant factors that appear reasonable and necessary" to include the present and financial resources of both parties to meet their own needs, including but not limited to, saving for retirement, the standard of living the child would have enjoyed had the marriage not dissolved, the financial resources of the child, and the child's academic performance. 750 ILCS 5/513(j)(1)-(4) (West 2016).

¶ 35    We find that any failure of the trial court to consider current financial information in determining whether to award postsecondary education expenses is solely Schurman's fault. Druse and Jenna filed current financial information with the court, while Schurman did not. On June 21, 2016, the court ordered Druse and Schurman to complete and file the FAFSA form. Schurman testified that he did not complete the form. The court became aware that Schurman was anticipating large income tax refunds and took steps by ordering him not to deposit or transfer those deposits. Schurman opted to defy that order and used the money for his own purposes. The trial court made numerous orders regarding discovery, including ordering Schurman to update his financial statement and to bring his 2015 income tax return to court. Although he did not update his financial statement, his wife eventually was able to bring the 2015 income tax return to the court. Schurman testified that he was having financial difficulties. However, the court noticed that Schurman was writing checks for large sums either to his wife or to his wife's appraisal business. Schurman

12

testified that these checks, although written to his wife, were intended to pay personal expenses. Although Schurman filed a petition in the United States Bankruptcy Court during the pendency of this case, that petition was subsequently dismissed, and Schurman did not provide updated information for the trial court's consideration.

¶ 36    In addition to the testimony from Schurman, the trial court was presented with evidence about Jenna's job and the income she derived from her employment as well as testimony and evidence from Druse about the status of her income and expenses.

¶ 37    Because the trial judge was able to assess each witness's credibility, we will not disturb a judgment following a bench trial unless the trial court's judgment is clearly contrary to the manifest weight of the evidence. *Jackson v. Bowers*, 314 Ill. App. 3d 813, 818, 731 N.E.2d 1252, 1257 (2000). A judgment is contrary to the manifest weight of the evidence if a conclusion opposite to that reached by the trial judge is obvious. *Comm v. Goodman*, 6 Ill. App. 3d 847, 853, 286 N.E.2d 758, 763 (1972). Here, the trial court was in the best position to determine the credibility of the parties. We find that the record shows that the trial court considered Schurman's finances. While Schurman's financial information was not current, that failure was his own in refusing to comply with discovery. In reviewing the record on appeal, we are not able to find that the trial court's order awarding Druse and Jenna with postsecondary education expense awards was contrary to the manifest weight of the evidence. *Id.*

¶ 38                    Failure to Credit for Excess Child Support Payments

¶ 39    Schurman finally alleges that the trial court erred in not crediting him for all child support payments he made over the amount ordered by the trial court pursuant to stipulation on May 1, 2001—$150 every two weeks. In an apparent effort to avoid the expense of hiring attorneys to obtain a court-ordered increase in child support based upon increases in Schurman's income,

13

Schurman voluntarily modified the amount of his child support payments, as follows: to $225 every two weeks beginning January 1, 2009, and $245 every two weeks beginning January 1, 2011. There was no trial court order formalizing and confirming the accuracy of the two increases in child support Schurman made. Druse argues that the additional payments Schurman made were voluntary and therefore he is not allowed to receive credit. We agree with Druse's position, which is consistent with the law in Illinois.

¶ 40    We find that the case of *Blisset v. Blisset*, 123 Ill. 2d 161, 526 N.E.2d 125 (1988), is helpful to understand that courts cannot sanction agreed-to child support orders that were not ratified by the court system. In *Blisset v. Blisset*, the parties divorced, and child support amount was set in 1975. *Id.* at 164-65. In June 1977, the parties came to an agreement by which the father would give up his rights to visitation with his children in exchange for the mother's agreement to forego child support. *Id.* at 165. The agreement was made without an attorney and was not formalized in the court file. Years later, the father resumed visitation with the mother's approval. *Id.* at 166. Thereafter in 1984, the mother filed a petition seeking the resumption of child support as well as back child support. *Id.* at 164. The father objected because of the earlier 1977 negotiated settlement. *Id.* at 165.

¶ 41    In *Blisset v. Blisset*, the supreme court confirmed that modification of a child support obligation is a judicial function, "administered exclusively by the court as a matter of discretion." *Id.* at 167. At the foundation of a child support order is the court's requirement to protect the best interests of the child. *Id.* A trial court is not bound by an agreement between the parents that involves support. *Id.* "[P]arents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the

14

satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children." *Id.*

¶ 42 Moreover, Illinois follows the general rule that disallows credit for voluntary overpayments of child support. *In re Marriage of Tollison*, 208 Ill. App. 3d 17, 19-20, 566 N.E.2d 852, 854 (1991). The rule applies even in situations where the party making the voluntary overpayments was under the mistaken belief that he or she was legally required to make the overpayment. *Id.* This rule exists in order to ensure that party cannot unilaterally modify the support decree that would affect the expectations of the custodial parent, and thus result in a deprivation of a child's future benefits. *Id.*; *In re Marriage of Olsen*, 229 Ill. App. 3d 107, 114-15, 593 N.E.2d 859, 865 (1992).

¶ 43 Schurman did not utilize the court system in order to modify the amount of child support he paid. Had he done so, the trial court, utilizing the statutory rules, could have required him to pay more or less than he did pay. Regardless, there was no court order verifying a sum that he was required to pay. When the Illinois Department of Children and Family Services got involved with the child support that Druse received, the last court order on file was the order that the department used to set up its wage deduction order. The wage deduction order was thus based upon a lesser amount than the amount that Schurman had been paying to Druse for child support. We are constrained to follow Illinois law, which protects the children. We affirm the trial court's order awarding Schurman no benefit for his "voluntary overpayments" of child support.

¶ 44                                        CONCLUSION

¶ 45 For the reasons stated in this order, we find that the trial court's award of attorney fees was appropriate and affirm that award. We also affirm the trial court's awards of postsecondary education expenses to Druse and Jenna but remand that portion of the order lacking a set end date

15

in compliance with section 513(a) of the Act with directions that the court amend the order to include the statutory end date for these awards. Finally, we affirm the trial court's determination that Schurman should not receive credit for any voluntary overpayments of child support.

¶ 46    Affirmed and remanded with directions.